UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiff, | ) |
| vs. | ) ) ) ) ) |
| TEXTRON INC., LEWIS B. CAMPBELL, and TED R. FRENCH, | ) ) ) |
| Defendants. | ) ) |

09 Civ. 0367-ML-LDA

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF CLEVELAND BAKERS & TEAMSTERS PENSION FUND, CLEVELAND BAKERS & TEAMSTERS HEALTH & WELFARE FUND AND LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM TO BE APPOINTED LEAD PLAINTIFFS AND FOR APPROVAL OF THEIR SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................ 2

III. ARGUMENT ...................................................................................................... 5

   A.  Movants Satisfy the Lead Plaintiff Requirements of the Exchange Act
       and Should Be Appointed Lead Plaintiffs ............................................................ 5

       1.  Cleveland Bakers and LaMPERS Have Timely Moved for
           Appointment as Lead Plaintiffs ................................................................ 6

       2.  Cleveland Bakers and LaMPERS Have the Requisite
           Financial Interest in the Relief Sought By the Class ...................................... 7

       3.  Congress Expressly Envisioned that Institutional Investors
           Like Cleveland Bakers and LaMPERS Would Be Appointed
           as Lead Plaintiffs in Securities Fraud Actions Like This ............................... 7

       4.  Cleveland Bakers and LaMPERS Otherwise Satisfy Rule 23 of
           the Federal Rules of Civil Procedure .............................................................. 8

   B.  The Court Should Approve Cleveland Bakers' and LaMPERS'
       Selection of Counsel ...................................................................................... 10

IV.  CONCLUSION ................................................................................................. 12

i

## TABLE OF AUTHORITIES

Page(s)

### CASES

*In re Bank of Boston Corp. Sec. Litig.*,
    762 F. Supp. 1525 (D.Mass.1991) ........................................................................................9

*In re Cendant Corp. Litig.*,
    182 F.R.D. 144 (D.N.J.1998) ..............................................................................................8

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ..........................................................................................8

*In re Lernout & Hauspie Sec. Litig.*,
    138 F. Supp. 2d 39 (D. Mass. 2001) ........................................................................6, 8, 9, 11

*In re UBS Auction Rate Sec. Litig.*,
    No. 08 Civ. 2967 (LMM), 2008 WL 2796592 (S.D.N.Y. July 16, 2008) ...............................8

*Olsen v. New York Community Bancorp, Inc.*,
    233 F.R.D. 101 (E.D.N.Y. 2005) ........................................................................................8

### STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78j(b)............................................................................................................................1
    §78t(a) ............................................................................................................................1
    §78u-4(a)(1)-(3)(B)(ii) ......................................................................................................5
    § 78u-4(a)(2)(A)..............................................................................................................7
    §78u-4(a)(3)(A)(i).............................................................................................................5
    §78u-4(a)(3)(A)-(B) ..........................................................................................................6
    §78u-4(a)(3)(B)........................................................................................................6, 7, 8
    §78u-4(a)(3)(B)(iii) ......................................................................................................1, 2
    §78u-4(a)(3)(B)(iii)(I)........................................................................................................6
    §78u-4(a)(3)(B)(v) ...................................................................................................1, 2, 10

Federal Rules of Civil Procedure
    Rule 23................................................................................................................6, 8, 10
    Rule 23(a)........................................................................................................................8
    Rule 23(a)(3)....................................................................................................................8
    Rule 23(a)(4)....................................................................................................................9
    Rule 42(a)........................................................................................................................1

17 C.F.R.
    §240.10b-5......................................................................................................................1

Institutional investor class members and lead plaintiff movants Cleveland Bakers & Teamsters Pension Fund and Cleveland Bakers & Teamsters Health & Welfare Fund (collectively, "Cleveland Bakers") and Louisiana Municipal Police Employees' Retirement System ("LaMPERS") (collectively, "Movants"), respectfully submit this memorandum of law in support of their motion for: (i) appointment of Cleveland Bakers and LaMPERS as lead plaintiffs in the action pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4; (ii) approval of Cleveland Bakers and LaMPERS' selection of the law firm of Scott+Scott LLP to serve as lead counsel for the Class pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v) and the Law Office of Peter N. Wasylyk as liaison counsel for the Class; and (iii) granting such other and additional relief as the Court may deem just and proper.

## I.    INTRODUCTION

Presently pending before this Court is the above-captioned securities class action lawsuit (the "Action") brought on behalf of all persons who purchased or otherwise acquired the securities of Textron Inc. ("Textron" or the "Company"), between July 17, 2007 and January 29, 2009 (the "Class Period"), and were damaged thereby. The Action is brought pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Pursuant to the PSLRA, the court is to appoint as lead plaintiff the movant to be appointed as such with the largest financial interest in the litigation that otherwise satisfies the requirements of Rule 42(a) of the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Here, Cleveland Bakers and LaMPERS should be appointed as lead plaintiffs

because: (1) this motion is timely filed; (2) to the best of its knowledge, Cleveland Bakers and LaMPERS possess the largest financial interest in this litigation which otherwise satisfies PSLRA requirements; and (3) Cleveland Bakers and LaMPERS will adequately represent the interests of the Class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Finally, Cleveland Bakers' and LaMPERS' selection of the law firm of Scott+Scott LLP ("Scott+Scott") to serve as lead counsel for the Class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.    FACTUAL BACKGROUND

This is a securities class action brought on behalf of all persons or entities, except for defendants, who purchased or otherwise acquired the securities of Textron during the Class Period against Textron and certain of its officers and/or directors for violations of the Exchange Act.

Textron Inc. is a multi-industry conglomerate consisting of a network of aircraft, defense, industrial and finance businesses. The Company consists of five operating segments. Four of the Company's operating segments are engaged in manufacturing: Cessna, Bell, Textron Systems and Textron Industrial. The fifth segment is its finance subsidiary, Textron Financial Corporation ("TFC"). Textron offers financing to facilitate purchases of the Company's products and other commercial finance services, including asset-based lending to third-party borrowers secured by the borrowers' inventories. The Company's Cessna subsidiary manufactures aircraft and has four major product lines: Citation business jets, Caravan single engine turboprops, single engine piston aircraft and aftermarket services.

During the Class Period, Textron and certain of the Company's officers and directors made materially false and misleading statements regarding Cessna's "backlog" of unfilled customer orders for aircraft. In several statements to analysts and investors, the Company

overstated Cessna's record quantity of backlog, making repeated false assurances of Cessna's, and thus Textron's, "continued uninterrupted growth well into the next decade." Unbeknownst to investors, there was no factual basis for these statements. In fact, Textron was counting as backlog, orders for business jets from a growing number of customers that were merely startups and/or financially distressed fleet operators, who clearly neither intended to, nor possessed the financial resources to, pay for or take delivery of aircraft during 2008 and beyond. This practice materially inflated Textron's backlog of unfilled orders for the Company's Cessna segment, which, in turn, materially overstated the Company's current financial condition and future prospects. In truth, many of the business jet orders reported as "backlog" were subject to deferral and cancellation.

In addition, during the Class Period, Textron failed to disclose the deterioration in TFC's "managed receivables" portfolio, primarily related to the segment's asset-based lending business. Managed receivables are outstanding balances on debt pools upon which securities have been issued. By mid-2007, the market value of TFC's managed receivables had materially declined due to the onset of the subprime lending crisis and resulting credit market dislocation. Despite the knowledge that a liquidation of these assets was inevitable, the named defendants engaged in a scheme to delay the recognition of hundreds of millions of dollars in losses. In December 2008, Textron was finally forced to reveal that TFC would have to sell or liquidate all of its commercial-finance businesses.

The truth about Textron's condition began to come to light through a series of unsettling events. On September 16, 2008, in advance of the Company's October 16, 2008 earnings release, analysts downgraded Textron to "Hold" from "Buy" citing deteriorating profit margins in Textron's manufacturing segments and higher debt – indicating "poor debt management"

3

within the Company's Finance segment.  Following this downgrade, Textron common stock fell in price by $3.41 per share, or 9.6%, to close at $32.13 on September 17, 2008.  On September 26, 2008, *Reuters* reported that analysts' consensus earnings for Textron were down $0.06 ($0.89 v. $0.95) for the third quarter 2008 compared to the same period last year.  In response, Textron common stock fell $4.46 per share, or 15.3%, from $32.49 to close at $27.50 on volume of more than 10 million shares.

On October 16, 2008, Textron announced that it would downsize its finance unit by at least $2 billion by liquidating its "Asset Based Lending and Structured Capital segments, and several additional product lines" leading to losses of $169 million for goodwill impairment. However, this was merely a partial disclosure.  TFC's financial assets still remained grossly overstated as the Company failed to report these financially distressed assets were impaired at fair market value.  Textron also announced "restructuring" charges of $25 million for worker layoffs and consolidations.  The Company reported third quarter earnings of $0.84 per share, $0.05 below analysts' estimates, and $0.16 below the same period last year.  Over the following days, Textron shares fell to a new 52-week low closing at $11.69 on October 23, 2008.

On December 22, 2008, Textron lowered its fourth quarter guidance.  In the release, the Company also announced that its board had approved plans to exit the Finance segment's commercial lending activities except for "captive financing" activities related to product sales in the Company's manufacturing segments.  Approximately $7.9 billion of TFC's $11.4 billion total financial assets were put on the blocks for "orderly liquidation" or "selective sales." Textron, belatedly, reported that $3.5 billion of TFC's "managed receivables," $1.5 billion of which were sold to investors through securitizations, had degraded in value resulting in prospective fourth quarter 2008 pre-tax charges *of $250 to 300 million and requiring Textron to*

*inject $600 million in capital to TFC under an existing support agreement*.  The Company announced further workforce reductions resulting from production cutbacks bringing total estimated restructuring costs to $65 million.  Following this announcement, Textron common stock fell $3.14 per share, more than 20.4%, to close at $12.20 on December 23, 2008.

Finally, on January 29, 2009, the last day of the Class Period, Textron announced that an estimated $30 million of the $65 million in "restructuring" costs would be incurred by the Company's Cessna segment due to production cutbacks and worker layoffs planned for the first quarter of 2009.  On this announcement, Textron common stock tumbled to close at $9.09 on volume of more than 26 million shares, a one-day decline of $4.21 per share, or 31.6%.

Prior to the announcement of these adverse events, Textron insiders, including named defendants Lewis B. Campbell and Ted R. French, sold more than 1 million shares of their artificially inflated Textron shares, capturing illicit proceeds of more than $67.1 million.

### III.    ARGUMENT

### A.    Movants Satisfy the Lead Plaintiff Requirements of the Exchange Act and Should Be Appointed Lead Plaintiffs

The PSLRA establishes the procedure governing the appointment of a lead plaintiff in private actions arising under the Exchange Act that were brought as class actions pursuant to the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(1)-(3)(B)(ii). First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff (the "Early Notice").   15 U.S.C. §78u-4(a)(3)(A)(i).   Here, the relevant Early Notice was published in *Business Wire* on August 13, 2009.  *See* Declaration of Peter N. Wasylyk concurrently filed herewith ("Wasylyk Decl."), Ex. A.  Within 60 days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be

appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B); *see also In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001).

Second, the PSLRA provides that within 90 days after publication of the Early Notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). Under this Exchange Act provision, the court "shall" appoint the "most adequate plaintiff" to serve as lead plaintiff. *Lernout*, 138 F. Supp. 2d at 43. The Exchange Act provides that the court is to presume the "most adequate plaintiff" to be the class member plaintiff who: (1) has either filed a complaint or moved for lead plaintiff in response to a notice; and (2) "has the largest financial interest in the relief sought" that otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I); *see also Lernout*, 138 F. Supp. 2d at 42.

### 1. Cleveland Bakers and LaMPERS Have Timely Moved for Appointment as Lead Plaintiffs

All class members who are interested in moving for appointment as lead plaintiff in this matter must have done so within 60 days of the initial publication of the Early Notice on August 13, 2009. 15 U.S.C. §78u-4(a)(3)(A)-(B). Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required August 13th Early Notice, Cleveland Bakers and LaMPERS hereby timely move this Court to be appointed lead plaintiffs on behalf of all members of the Class. Cleveland Bakers and LaMPERS also have duly signed and filed certifications stating their willingness to serve as a representative party on behalf of the Class. *See* Wasylyk Decl., Exs. B, C, and D.

6

### 2. Cleveland Bakers and LaMPERS Have the Requisite Financial Interest in the Relief Sought By the Class

During the Class Period, Cleveland Bakers purchased 15,560 shares of Textron common stock and lost more than $487,415 as a result thereof; LaMPERS purchased 19,900 shares of Textron common stock and lost more than $316,205 as a result thereof.[1]  *See* Wasylyk Decl., Ex. E.  Movants are not aware of any other lead plaintiff applicant with a larger financial interest in the litigation.  Because Cleveland Bakers and LaMPERS have a substantial financial interest and, as discussed below, otherwise satisfy all of the PSLRA's prerequisites for appointment as lead plaintiffs in this action, Cleveland Bakers and LaMPERS should be appointed lead plaintiffs pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### 3. Congress Expressly Envisioned that Institutional Investors Like Cleveland Bakers and LaMPERS Would Be Appointed as Lead Plaintiffs in Securities Fraud Actions Like This

Congress reasoned that increasing the role of larger investors, like Cleveland Bakers and LaMPERS, which typically have a larger financial stake in the outcome of the litigation, would be beneficial because investors with a large financial stake are more apt to effectively manage complex securities litigation.  *See* Conference Report on the Private Securities Litigation Reform Act of 1995, H.R. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 697, 733. ("[C]lass members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").  Indeed, courts have found that the appointment of institutional investors is consistent with the legislative intent of the

---

[1]    The total potential recoverable losses suffered by lead plaintiff movants are not the same as their legally compensable damages, measurement of which is often a complex legal question that cannot be determined at this stage of the litigation.  The approximate losses, however, can be determined from the certification requirement under Section 21D of the Exchange Act, 15 U.S.C. §78u-4(a)(2)(A) and based upon reference to information concerning the current market for the Company's shares.

PSLRA. *See Lernout*, 138 F. Supp. 2d at 42; *In re eSpeed, Inc. Sec. Litig*., 232 F.R.D. 95, 99-100 & n.23 (S.D.N.Y. 2005); *In re Cendant Corp. Litig*., 182 F.R.D. 144, 147 (D.N.J.1998); *see also In re UBS Auction Rate Sec. Litig.,* No. 08 Civ. 2967 (LMM), 2008 WL 2796592, at *4 (S.D.N.Y. July 16, 2008) ("[T]he PSLRA reflects a preference on the part of the Congress that passed it that institutional investors are the most desirable lead plaintiffs.").

Here, Cleveland Bakers and LaMPERS, sophisticated institutional investors with the largest financial stake in this litigation, are precisely the type of lead plaintiffs envisioned by Congress and, therefore, should be appointed as such.

**4.    Cleveland Bakers and LaMPERS Otherwise Satisfy Rule 23 of the Federal Rules of Civil Procedure**

According to 15 U.S.C. §78u-4(a)(3)(B), the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).

Of the four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative.  *Lernout*, 138 F.Supp.2d at 46; *Olsen v. New York Community Bancorp, Inc.*, 233 F.R.D. 101, 108 (E.D.N.Y. 2005).  Consequently, in deciding a motion to serve as lead plaintiff, the court need only inquire into the typicality and adequacy of the proposed lead plaintiff.  Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists where the plaintiffs' claims arise from the "same events or course of conduct" and involve the same legal theory as do

the claims of the rest of the class. *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D.Mass.1991). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *Lernout*, 138 F.Supp.2d at 46.

Cleveland Bakers and LaMPERS satisfy this requirement because, like all other class members, they: (1) purchased or acquired Textron securities during the Class Period; (2) purchased or acquired Textron securities in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, Cleveland Bakers and LaMPERS's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same conduct and course of events.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs the court to limit its inquiry of a movant's adequacy to represent the class to the following: (a) the absence of potential conflict between the named plaintiffs and the class member; (b) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation; and (c) the class has a sufficient interest to ensure vigorous adequacy. *Lernout*, 138 F. Supp. 2d at 46.

Here, Cleveland Bakers and LaMPERS are clearly "adequate" because their interests are aligned with the interests of the Class and because both suffered from the same artificial inflation of the price of Textron common stock and would benefit from the same relief. Additionally, Cleveland Bakers and LaMPERS are represented by Scott+Scott, a firm with significant securities fraud litigation experience that is more than adequately equipped and informed in this action to proceed as a class representative and lead plaintiff. Moreover, there is no evidence of

antagonism between Cleveland Bakers and LaMPERS and the Class. Finally, as shown below, Cleveland Bakers' and LaMPERS' proposed lead counsel for the Class, Scott+Scott, is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Moreover, Cleveland Bakers and LaMPERS have selected the Law Office of Peter N. Wasylyk to serve as liaison counsel. Principal, Mr. Wasylyk, also has significant class action experience. Accordingly, Cleveland Bakers and LaMPERS *prima facie* satisfy all of the requirements of Rule 23 for the purposes of this Motion.

**B.    The Court Should Approve Cleveland Bakers' and LaMPERS' Selection of Counsel**

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent. In that regard, Cleveland Bakers and LaMPERS have selected Scott+Scott to serve as lead counsel. Scott+Scott is a firm with substantial experience in the prosecution of shareholder and securities class actions and possesses the resources necessary to efficiently conduct this litigation. *See* Wasylyk Decl., Ex. E.

Scott+Scott has served as lead or co-lead counsel in many high profile class actions, recovering hundreds millions of dollars for investors and others harmed by corporate mismanagement, forcing a number of important corporate reforms. Scott+Scott recently obtained a settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Sec. Litig.*, No. 00-01844 (D. Conn.). Scott+Scott likewise obtained a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.). Additional recent securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement

10

of $50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone Systems, Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) (settlement of $27 million); *In re Qwest Communications International, Inc.*, No. 02-08188 (Colorado District Court, City and County of Denver) (shareholder derivative settlement including significant corporate governance reforms and $25 million for the company); and *In re Lattice Semiconductor Corp. Deriv. Litig.*, No. 043327 (Cir. Ct. Oregon) (significant monetary recovery and business reforms, including termination of the then-CEO, termination and adoption of significant changes to the company's auditing, insider trading, executive compensation and other internal practices).

   In addition, Cleveland Bakers and LaMPERS have selected the Law Office of Peter N. Wasylyk as liaison counsel. Mr. Wasylyk has significant complex litigation experience. Accordingly, the Court should approve Movants' selection of counsel. *Lernout*, 138 F. Supp. 2d at 46-47.

## IV.    CONCLUSION

For all the foregoing reasons, Cleveland Bakers and LaMPERS respectfully request that the Court: (1) appoint Cleveland Bakers and LaMPERS as lead plaintiffs in the Action; (2) approve Cleveland Bakers' and LaMPERS' selection of Scott+Scott to serve as lead counsel for the Class and the Law Office of Peter N. Wasylyk as liaison counsel for the Class, and (3) order such other relief as the Court may deem just and proper.

DATED:  October 13, 2009                        Respectfully submitted,
                                                LAW OFFICE OF PETER N. WASYLYK

                                                /s/ Peter N. Wasylyk
                                                PETER N. WASYLYK (Bar No. 3351)
                                                1307 Chalkstone Avenue
                                                Providence, Rhode Island 02908
                                                Tel: 401/831-7730
                                                Fax: 401/861-6064
                                                pnwlaw@aol.com

                                                SCOTT+SCOTT LLP
                                                DAVID R. SCOTT
                                                108 Norwich Avenue
                                                P.O. Box 192
                                                Colchester, CT 06415
                                                Tel: 860/537-5537
                                                Fax: 860/537-4432
                                                drscott@scott-scott.com

                                                SCOTT+SCOTT LLP
                                                ARTHUR L. SHINGLER III
                                                MARY K. BLASY
                                                HAL D. CUNNINGHAM
                                                600 B Street, Suite 1500
                                                San Diego, CA 92101
                                                Tel: 619/233-4565
                                                Fax: 619/233-0508
                                                ashingler@scott-scott.com
                                                mblasy@scott-scott.com
                                                hcunningham@scott-scott.com

SCOTT+SCOTT LLP
JOSEPH P. GUGLIELMO
29 West 57th Street
New York, NY  10019
Tel: 212/223-6444
Fax: 212/223-6334
jguglielmo@scott-scott.com

**Attorneys for Proposed Lead Plaintiffs**

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2009, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I caused the foregoing document or paper to be mailed via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 13, 2009.

/s/ Peter N. Wasylyk
PETER N. WASYLYK (Bar No. 3351)
1307 Chalkstone Avenue
Providence, Rhode Island 02908
Tel: 401/831-7730
Fax: 401/861-6064
pnwlaw@aol.com