**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 09-cv-00367-ML-LDA |
| vs. | ) ) | CLASS ACTION |
| TEXTRON INC., LEWIS B. CAMPBELL, and TED R. FRENCH, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE INTER-LOCAL PENSION FUND OF THE GRAPHIC COMMUNICATIONS CONFERENCE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS FOR APPOINTMENT OF LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.      The Inter-Local Pension Fund Should be Appointed Lead Plaintiff . . . . . . . . . . . 5

        A.      The Procedural Requirements of the PSLRA . . . . . . . . . . . . . . . . . . . . . . 5

        B.      The Inter-Local Pension Fund is the "Most Adequate Plaintiff"
                under the PSLRA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                1.      The Inter-Local Pension Fund Made a Timely Motion for
                        Appointment as Lead Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                2.      The Inter-Local Pension Fund Has the Largest Financial
                        Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                3.      The Inter-Local Pension Fund Otherwise Satisfies Rule 23 . . . . . . 9

                        a.      The Inter-Local Pension Fund Satisfies the
                                Typicality Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                        b.      The Inter-Local Pension Fund Satisfies the Adequacy
                                Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

II.     The Court Should Approve the Inter-Local Pension Fund's Selection of
        Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## <u>TABLE OF AUTHORITIES</u>

### CASES

*In re Alltel Corp. Shareholder Litigation*, Case No. 2975-CC (Chancery Ct. Del.) ..................14

*Andrews v. Bechtel Power Corp.*, 780 F.2d 124 (1st Cir. 1985) ..................................12

*In re Bally Total Fitness Securities Litigation*, No. 04 C 3530, 2005 WL 627960 (N.D. Ill. March 15, 2005)..........................................................................................9

*Bassin v. deCODE Genetics, Inc.*, 230 F.R.D. 313 (S.D.N.Y. 2005)............................................6

*In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298 (S.D. Ohio 2005) ...................................14

*In re Catalina Marketing Corp. Securities Litigation*, 225 F.R.D. 684 (M.D. Fl. 2003) ..............8

*In Re Cendant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001) ................................................9, 13

*Dees v. Colonial BancGroup, Inc.*, Civil Action No. 2:09cv104-MHT, 2009 WL 1285424 (M.D. Ala. May 7, 2009)..................................................................................11

*In re Enterasys Networks, Inc.*,  No. 02-071-M, 2002 WL 1901356 (D.N.H. Aug. 2, 2002)................................................................................................................7, 10, 11

*In re GCA Corporation Securities Litigation*, C.A. No. 85-4693-C (D. Mass.) .........................15

*In re General Electric Securities Litigation*, No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...............................................................................7, 8

*Goldberg v. Americana Hotels and Realty Corp.*, No. 86-cv-3166-WGY (D. Mass.).................15

*Greebel v. FTP Software, Inc.*, 939 F. Supp. 57 (D. Mass. 1996)................................................6

*In re GTECH Holdings Corp. Securities Litigation*, Master File No. 94-0294-P (D. R.I.)..........15

*Harad, et al. v. Wedgestone Financial, et al.*, No. 89-cv-0987-WJS (D. Mass.).........................15

*Kinney v. Metro Global Media, Inc.*, No. Civ.A. 99-579 ML (Lisi, J.), 2002 WL 31015604 (D.R.I. Aug. 22, 2002) ...................................................................................11, 12

*Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997)................................................................................................................6

*Leech, et al. v. Brooks Automation, Inc., et al.*, Civil Action No. 06-11068-RWZ, 2006 WL 3690736 (D. Mass. Dec. 13, 2006) ...........................................................7, 9, 13, 14

*In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39 (D. Mass. 2001)................. 7, 10, 11, 14

*Lucia v. Prospect Street High Income Portfolio, Inc.*, No. 90-cv-10781-ADM (D. Mass.) .........15

*In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.) .................15

*Miller v. New America High Income Fund*, No. 90-cv-10782-ADM (D. Mass.).........................15

*In re Motorola Secs. Litig.*, No. 03 C 287, 2003 WL 21673928 (N.D.Ill. July 16, 2003)...... 10, 11

*New England Carpenters Health and Welfare Fund, et al v. First DataBank*, 05-cv-
    11148-PBS, 2009 WL 2408560 (D. Mass. Aug. 3, 2009)......................................................15

*O'Brien v. Ashcroft (Tyco Corp. Derivative Litigation)*, No. 03-E-0005 (N.H. Super. Ct.) .........15

*Ong v. Sears, Roebuck & Co.*, No. 03-cv-04142 (N.D. Ill.)...........................................................14

*In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL Docket No.
    1456 (D. Mass.)..................................................................................................................15

*In re Relafen Antitrust Litigation*, No. 01-cv-12239-WGY (D. Mass.)........................................15

*In re SCOR Holding (Switzerland) AG Litigation*, No. 04-cv-07897-DLC (S.D.N.Y.) ...............14

*Shore, et al. v. Ukropina, et al. (Pacific Enterprises, Inc.)*, Case No. BC047961 (Super.
    Ct. Cal.) .............................................................................................................................14

*State Universities Retirement System of Illinois v. Sonus Networks, Inc., et al.*, C.A. No.
    06-10040-MLW, 2006 WL 3827441 (D. Mass. Dec. 27, 2006) .............................. 6, 7, 9, 13

*In re Tyco International, Ltd.*, No. 00-MD-1335-B, 2000 WL 1513772 (D.N.H. Aug. 17,
    2000)........................................................................................................... 10, 11, 12, 13

*Welmon, et al. v. Chicago Bridge & Iron Co. N.V., et al.*, No. 06-cv-01283-LTD
    (S.D.N.Y.)...........................................................................................................................14

## STATUTES AND RULES

15 U.S.C. §78u-4(a)(1).....................................................................................................................5

15 U.S.C. §78u-4(a)(3)(A) ..............................................................................................................6

15 U.S.C. §78u-4(a)(3)(A)-(B).........................................................................................................8

15 U.S.C. §78u-4(a)(3)(A)(i) ............................................................................. 5, 6, 8

15 U.S.C. §78u-4(a)(3)(A)(ii) .................................................................................. 6

15 U.S.C. §78u-4(a)(3)(B) .................................................................................. 1, 2

15 U.S.C. §78u-4(a)(3)(B)(i) .................................................................................. 7

15 U.S.C. §78u-4(a)(3)(B)(iii) ................................................................................ 7

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ............................................................................ 6

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ...................................................................... 9

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) ...................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ........................................................................ 12

15 U.S.C. §78u-4(a)(3)(B)(v) .............................................................................. 13

29 U.S.C. § 1132(a) ............................................................................................ 1

17 C.F.R. §240.10b-5 ........................................................................................... 1

Fed. R. Civ. P. 6(a)(4)(A) ..................................................................................... 8

Fed. R. Civ. P. 23(a) ........................................................................................... 10

Fed. R. Civ. P. 23(a)(3) ....................................................................................... 10

Fed. R. Civ. P. 23(a)(4) ....................................................................................... 12

## MISCELLANEOUS

H.R. CONF. REP. 104-369, 1995 U.S.C.C.A.N. 730, 1995 WL 709276, 34 (Leg. Hist.)
    (Nov. 28, 1995) ............................................................................................. 13

## PRELIMINARY STATEMENT

Presently pending before this Court is a securities class action lawsuit (the "Action") brought on behalf of all purchasers of the securities of Textron Inc. ("Textron" or the "Company") between July 17, 2007 and January 29, 2009, inclusive (the "Class Period").[1] The Action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and the Securities Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5), against Defendants Textron, Lewis B. Campbell, and Ted R. French.

Pursuant to Section 21D(a)(3)(B) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), the Inter-Local Pension Fund of the Graphic Communications Conference of the International Brotherhood of Teamsters ("Movant" or the "Inter-Local Pension Fund"), respectfully submits this memorandum of law in support of its motion to: (i) appoint the Inter-Local Pension Fund as Lead Plaintiff; (ii) approve the Inter-Local Pension Fund's selection of the law firm of Spector Roseman Kodroff & Willis, P.C. ("SRKW") as Lead Counsel for the putative class and The Law Office of Mark B. Morse as Liaison Counsel; and (iii) granting such other relief as the Court may deem just and proper.

Having suffered losses totaling approximately $1,386,050.72 – which, to the best of its knowledge, constitutes the largest losses suffered by any class member movant – as a result of its investments in Textron securities during the Class Period, the Inter-Local Pension Fund believes it is the "most adequate plaintiff," as defined by the PSLRA, and thus should be appointed Lead

---

[1] Also presently pending in this District are five (5) cases against Textron Inc. and the fiduciaries of the Textron Savings Plan brought on behalf of participants and beneficiaries of the Textron Savings Plan: *Leach v. Textron Inc., et al.*, CA 09-383 ML; *Sheets v. Textron, Inc., et al.*, CA 09-412 S; *Felton v. Textron, Inc., et al.*, CA 09-421 ML; *Perez v. Textron, Inc., et al.*, CA 09-424 ML; and *Tompkins v. Textron, Inc., et al.*, CA 09-446 S. These cases allege violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a).

Plaintiff in the Action.   15 U.S.C. §78u-4(a)(3)(B).   The Inter-Local Pension Fund is precisely the type of sophisticated institutional investor that the PSLRA contemplates to be appointed lead plaintiff to represent the interests of all class members in securities class action litigation. Furthermore, the Inter-Local Pension Fund has submitted a sworn certification attesting to its desire to serve as Lead Plaintiff in the Action, and further demonstrating its understanding of the attendant duties and obligations of serving as such.   *See* Declaration of Mark S. Willis ("Willis Decl."), Exhibit B.

As discussed herein, in addition to having the largest financial interest in the outcome of this litigation, the Inter-Local Pension Fund satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and as such, is presumptively the "most adequate plaintiff" and clearly deserving of appointment as Lead Plaintiff in the Action. Likewise, its selection of lead and liaison counsel should be approved.

## FACTUAL AND PROCEDURAL BACKGROUND

Textron, founded in 1923 and headquartered in Providence, Rhode Island, is a manufacturer of aircraft and industrial products, including such brands as Cessna Aircraft, Bell Helicopter, and E-Z-GO golf carts.   Textron also offers its customers financing to facilitate purchases of its products, as well as other commercial finance services, through its subsidiary, Textron Financial Corporation.

During the Class Period, Textron and members of its senior management sought to extricate the Company from various financial setbacks by disseminating false and misleading information which included:  (a) the inflation of the Company's purported "backlog" of unfilled orders, and (b) the failure to disclose that the Company's Finance segment had incurred serious

losses in terms of the fair market value of receivables and other assets. As a result of these misrepresentations, the Company's stock price was artificially inflated during the Class Period.

Specifically, Plaintiff alleges that the Defendants caused the Company to materially overstate the demand for its Cessna aircrafts by reporting an inflated "backlog" of orders placed for aircraft. Such "backlogs" indicated to investors that the Company would experience anticipated "uninterrupted growth" in sales going forward. However, the Company failed to disclose the fact that a material amount of these orders was from start-up and/or financially distressed customers who were not in a financial position to pay for or take delivery of the aircraft. Additionally, Textron failed to disclose that it had suffered significant deterioration in its "managed receivables" portfolio, largely related to the Finance segment's asset-based lending business. These substantial losses were not disclosed on Textron's balance sheet, and as a result, the Company's securities traded at artificially inflated prices during the Class Period.

Textron continually misled the investors throughout the Class Period. For example, a public statement by the Company on July 19, 2007, in announcing its results for the second quarter of 2007, stated that "the strength of demand for our innovative products," was the basis for the Company raising its earnings and cash flow outlook. Likewise, in announcing Textron's third quarter 2007 results, on or about October 8, 2007, Defendants reported a backlog in Cessna orders of an "all-time high of $11.9 billion." Similarly positive statements continued in announcements made on January 24, 2008, April 17, 2008, and July 17, 2008 – in which the Company continually reported increases in its backlog of Cessna orders and a strong portfolio quality in the Finance segment.

However, on September 16, 2008, in advance of Textron's October 16, 2008 earnings release for the third quarter 2008, analysts cited deteriorating profit margins in Textron's

manufacturing segments and "poor debt management" in the Finance segment. Accordingly, these analysts downgraded Textron from "Buy" to "Hold." On this news, the stock price dropped 10% to close at $31.51 per share on September 17, 2008.[2] Then, on October 16, 2008, the Company announced that it was downsizing its Finance unit by at least $2 billion by exiting the Asset Based Lending and Structured Capital segments, as well as several additional product lines. However, Textron did ***not*** disclose the fact that its financial assets were still grossly overstated due to the fact that it had not reported these distressed assets at fair market value. Textron also announced at that time that it was taking "restructuring" charges of $25 million in connection with consolidations and worker layoffs. Despite failing to disclose the true state of its financial condition, these announcements caused the Company's shares to fall to a 52-week low of $11.46 by October 23, 2008.

On December 22, 2008, in a partial disclosure of the problems the Company was experiencing, Defendants announced that it planned to exit all of the Finance segment's commercial lending activities, except for "captive financing" for product sales. As such, nearly $8 billion of the Finance segment's $11.4 billion in total financial assets were designated for liquidation. Thus, Textron reported that the value of the Finance segment's $3.5 billion of receivables had deteriorated, requiring the Company to take a $250-$300 million pre-tax charge for the fourth quarter 2008 and to inject $600 million in capital into the Finance segment. Additionally, Textron reported that the restructuring costs it initially announced in October would swell to $65 million for further workforce reductions and production cutbacks.

Finally, on January 29, 2009, the last day of the Class Period, Textron finally revealed the truth not only about its Finance segment, but also about production. It announced that $30

---

[2] It should be noted that there was a 2:1 stock split on August 27, 2007. All per share values herein reflect the split.

million of the $65 million restructuring costs would be incurred by the Cessna segment for production cutbacks and worker layoffs that were planned for the first quarter 2009 – a dramatically different picture from what was indicated by the Company's representations as to backlogged orders.  As a result, Textron's stock suffered a one-day decline of $4.19, or 31%, to close at $9.05 per share.

A class action lawsuit was subsequently filed in this District against Textron and its senior management, on behalf of investors who purchased or otherwise acquired the Company's securities during the Class Period.  The complaint alleges that the Defendants disseminated information intended for the investing community which contained false and misleading information about the Company's financial results and the stability and profitability of its current and future operations in violation of the Exchange Act.

The Inter-Local Pension Fund now timely files this motion, within sixty (60) days after the first publication of notice of a lawsuit, as prescribed by the PSLRA.  15 U.S.C. §78u-4(a)(3)(A)(i).[3]

## ARGUMENT

### I.    The Inter-Local Pension Fund Should Be Appointed Lead Plaintiff

### A.    The Procedural Requirements of the PSLRA

The PSLRA sets forth a detailed procedure that governs the selection of a lead plaintiff to oversee "each private action arising under this [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1).

---

[3] The first securities class action against defendants, styled *City of Roseville Employees' Retirement System v. Textron Inc., et al.*, was filed on August 12, 2009.  On August 13, 2009, counsel in that action published a notice on *Business Wire.  See* Willis Decl., Exhibit A.

*First*, the PSLRA instructs that the plaintiff who files the initial complaint in an action must publish notice to the class not later than twenty (20) days after the date on which the complaint was filed, informing the class of the claims asserted in the action and the purported class period, and notifying them of their right to file a motion to be appointed lead plaintiff in the action. 15 U.S.C. §78u-4(a)(3)(A). Within sixty (60) days of publication of the required notice, any member or members of the proposed class may apply to the court to be appointed as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(ii). "[W]hile the PSLRA establishes qualifications for lead plaintiffs, the filing of a complaint is not one of them." *State Universities Retirement System of Illinois v. Sonus Networks, Inc., et al.*, C.A. No. 06-10040-MLW, 2006 WL 3827441, *3 (D. Mass. Dec. 27, 2006), citing 15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

The first notice of the pendency of a class action in this Action was published August 13, 2009 on *Business Wire*, a "widely circulated national business-oriented publication or wire service." 15 U.S.C. §78u-4(a)(3)(A)(i); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996) (discussing Congressional intent behind publication requirement and concluding, "[proposed lead plaintiff's] press release on *Business Wire* satisfied the requirements..."). *See also, Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *1 (N.D. Ill. Aug. 11, 1997) (publication of notice of pendency through *Business Wire* was in compliance with requirements of the Exchange Act). The notice indicated that Class Members who sought to move for appointment as lead plaintiff in the Action must do so no later than sixty (60) days after August 13, 2009. *See* Willis Decl., Exhibit A. The Inter-Local Pension Fund has timely submitted the instant application within this prescribed period, and thus meets the procedural requirements of the PSLRA. *See Bassin v. deCODE Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (proposed lead plaintiff who filed application within sixty days of

notice of class action published in *Business Wire* satisfied the procedural requirements of the PSLRA).

*Second*, the PSLRA provides that within ninety (90) days after publication of the notice of pendency, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the movant or movants that the court determines to be the most capable of adequately representing the class members' interests.   15 U.S.C. §78u-4(a)(3)(B)(i); *Sonus Networks, Inc.*, 2006 WL 3827441, at *1; *In re Enterasys Networks, Inc.*, No. 02-071-M, 2002 WL 1901356, *2 (D.N.H. Aug. 2, 2002).   In determining which movant or movants are the "most adequate plaintiff," the PSLRA instructs that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that--
>
>> (aa) has either filed the complaint or made a motion in response to a notice . . .
>>
>> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>>
>> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [instructing on class actions].

15 U.S.C. §78u-4(a)(3)(B)(iii); *Leech, et al. v. Brooks Automation, Inc., et al.*, Civil Action No. 06-11068-RWZ, 2006 WL 3690736, *1 (D. Mass. Dec. 13, 2006); *In re Lernout & Hauspie Sec. Litig.*, 138 F.Supp.2d 39, 42-43 (D. Mass. 2001).

As discussed below, the Inter-Local Pension Fund has the largest financial interest in the relief sought by the class and otherwise satisfies Rule 23.  *See Leech*, 2006 WL 3690736, at *4 (finding two lead plaintiff applicants met requirements of Rule 23 and appointing as lead plaintiff the applicant with greater financial interest). *See also In re General Electric Securities*

*Litigation*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, *5 (S.D.N.Y. July 29, 2009) (finding institutional investor was presumptive lead plaintiff because it suffered the greatest loss, was envisioned by Congress in enacting the PSLRA, and met the typicality and adequacy requirements of Rule 23); *In re Catalina Marketing Corp. Securities Litigation*, 225 F.R.D. 684, 686 (M.D. Fl. 2003) (proposed lead plaintiff having the largest financial interest and meeting the requirements of Rule 23 was presumed to be the most adequate lead plaintiff).

### B.     The Inter-Local Pension Fund is the "Most Adequate Plaintiff" under the PSLRA

#### 1.     The Inter-Local Pension Fund Made a Timely Motion for Appointment as Lead Plaintiff

As referenced above, the time period in which a class member may move to be appointed lead plaintiff in the instant Action expires on October 12, 2009[4], sixty (60) days from the day on which notice of pendency was first published.  15 U.S.C. §78u-4(a)(3)(A)(i).  Pursuant to the provisions of the PSLRA and within the requisite time frame, the Inter-Local Pension Fund timely moves this Court to be appointed lead plaintiff on behalf of all plaintiffs and class members in the Action, as well as any other actions deemed in the future to be related by this Court.  A movant need not have filed a complaint.  15 U.S.C. §78u-4(a)(3)(A)-(B).

#### 2.     The Inter-Local Pension Fund Has the Largest Financial Interest

The Movant's certification submitted herewith, indicates, among other things, the Inter-Local Pension Fund's transactions in Textron securities during the Class Period, which resulted in a loss of approximately $1,386,050.72 during the Class Period.  *See* Willis Decl., Exhibit B. As of the date of this filing, the Inter-Local Pension Fund is aware of no other class member movant whose losses exceed that of itself, and thus believes that it has suffered the greatest

---

[4] As October 12, 2009 was a legal holiday, as defined by Fed. R. Civ. P. 6(a)(4)(A), this Motion is timely filed on October 13, 2009.  *See* Fed. R. Civ. P. 6(a)(3).

financial loss of any movant seeking to be appointed lead plaintiff in the Action. The Inter-Local Pension Fund therefore has the "largest financial interest in the relief sought by the class," as required under 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). *See In re Bally Total Fitness Securities Litigation*, No. 04 C 3530, 2005 WL 627960, at *5 (N.D. Ill. March 15, 2005) (institutional investor claiming greatest losses therefore had the largest financial interest).

Courts have noted that four factors are relevant to the manner in which the "largest financial interest" is determined under the statute:

> "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered."

*Sonus Networks, Inc.*, 2006 WL 3827441 at *2, quoting *In Re Cendant Corp. Litigation*, 264 F.3d 201, 262 (3d Cir. 2001). *See also, Leech*, 2006 WL 3690736, at *2. The Inter-Local Pension Fund suffered a loss of approximately $1,386,050.72 as a consequence of its investments in Textron securities during the Class Period, when the value of the securities declined as a result of the Defendants' misconduct.

Therefore, in light of the fact that it suffered the largest known losses and has the largest financial interest in the outcome of the litigation, the Inter-Local Pension Fund is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff.

### 3.     The Inter-Local Pension Fund Otherwise Satisfies Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation and filing a timely motion for appointment as lead plaintiff, the PSLRA also requires the lead plaintiff to "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) permits a party to serve as a class representative on behalf of all class members, if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of these four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative and are relevant considerations on a motion for appointment of lead plaintiff under the PSLRA. *See In re Lernout & Hauspie Sec. Litig.*, 138 F.Supp. at 46 ("Only the last two prongs [of Rule 23], typicality and adequacy, need to be satisfied for purposes of this [lead plaintiff] inquiry."); *In re Enterasys Networks*, 2002 WL 1901356, at *2 (presumptive lead plaintiff only needs to make a preliminary showing that it meets the typicality and adequacy requirements of Rule 23); *In re Tyco International, Ltd.*, No. 00-MD-1335-B, 2000 WL 1513772, *5 (D.N.H. Aug. 17, 2000).

Thus, when determining which plaintiff is "most adequate" to represent the proposed class of Textron investors in the Action, the Court should limit its inquiry to the typicality and adequacy components of Rule 23(a) and should reserve its examination of the other two requirements until the class certification stage. *See In re Motorola Secs. Litig.*, No. 03 C 287, 2003 WL 21673928, *3 (N.D.Ill. July 16, 2003). As demonstrated below, the Inter-Local Pension Fund meets both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### a. The Inter-Local Pension Fund Satisfies the Typicality Requirement

Rule 23(a)(3) requires the claims or defenses of the class representative to be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Typicality exists where a plaintiff's

claims are based on the same legal theories as the claims of the other class members and where the plaintiff's claims arise from the same course of conduct. *See Kinney v. Metro Global Media, Inc.*, No. Civ.A. 99-579 ML (Lisi, J.), 2002 WL 31015604, *4 (D.R.I. Aug. 22, 2002) (finding proposed class representatives' claims typical of the class' claims where proposed representatives asserted that they – like the other proposed class members – "suffered damages when they purchased [defendant's] stock at artificially inflated prices in reliance on the integrity of the market"); *In re Lernout & Hauspie Sec. Litig.* at 46. Rule 23 does not require that the lead plaintiff's claims are identical to the claims of other class members. *See In re Tyco International, Ltd.*, 2000 WL 1513772, at *7. *See also, In re Motorola Secs. Litig.*, 2003 WL 21673928, at *3 (N.D.Ill. July 16, 2003). Indeed, typicality can be found even where there are some factual distinctions between the claims of the lead plaintiff and the claims of other class members. *Id.*

Here, the Inter-Local Pension Fund's claims are clearly typical of the claims of other class members who suffered damages as a result of Textron's misconduct during the Class Period. Like the other class members, the Inter-Local Pension Fund purchased or otherwise acquired its Textron securities at artificially inflated prices in reliance on Defendants' materially false and misleading statements and/or omissions primarily relating to the Company's backlog of unfilled orders for aircraft and material deterioration in the Company's Finance segment. Its claims arise from the same events or course of conduct that gives rise to the other proposed class members' claims, and the Inter-Local Pension Fund therefore meets the typicality requirement of Rule 23. *See Kinney*, 2002 WL 31015604, at *4; *In re Enterasys Networks*, 2002 WL 1901356, at *2; *In re Tyco International, Ltd.*, 2000 WL 1513772, at *6. *See also, Dees v. Colonial BancGroup, Inc.*, Civil Action No. 2:09cv104-MHT, 2009 WL 1285424, *3 (M.D. Ala. May 7,

2009) (claims of large institutional investor were typical where investor bought and sold stocks throughout the class period and asserted injuries caused by the alleged misrepresentations in the case).

        **b.**       **The Inter-Local Pension Fund Satisfies the Adequacy Requirement**

Under Rule 23(a)(4), the party representing the class must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement will be met where a plaintiff shows " 'that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.' " *Kinney*, 2002 WL 31015604, at *5, citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)(citation omitted). *See also, In re Tyco International, Ltd.*, 2000 WL 1513772, at *6 (same); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Inter-Local Pension Fund has demonstrated its adequacy under the statute by retaining experienced counsel who are able to conduct this complex litigation in a highly competent and professional manner, by submitting a Certification declaring its commitment to protect the interests of the class, and by its willingness to be actively involved in prosecuting the case and overseeing counsel. *See* Willis Decl., Exhibit B. Furthermore, its interests are clearly aligned with those of the class, and there is no evidence of any conflict between the Inter-Local Pension Fund and any other member of the proposed class. Having suffered significant losses as a result of the misconduct at Textron, the Inter-Local Pension Fund has a substantial financial interest in prosecuting the Action against all culpable parties and vigorously pursuing all avenues of recovery. Moreover, as explained more fully below, the Inter-Local Pension Fund has further demonstrated its adequacy through the selection of highly experienced counsel with notable skill

12

and professionalism to represent the class. Therefore, the Inter-Local Pension Fund meets the adequacy requirement of Rule 23.

It deserves note that the appointment of the Inter-Local Pension Fund as Lead Plaintiff would also meet one of the primary legislative goals in enacting the PSLRA – namely, to encourage sophisticated institutional investors with large financial holdings to serve as lead plaintiffs in securities class actions. H.R. CONF. REP. 104-369, 1995 U.S.C.C.A.N. 730, 1995 WL 709276, *34 (Leg. Hist.) (Nov. 28, 1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). *See also, In re Tyco International, Ltd.*, 2000 WL 1513772, at *1 ("Among other objectives, Congress sought to ensure that such [securities class] actions would be controlled by investors with a significant stake in the litigation[.]"). Indeed, the Inter-Local Pension Fund is precisely the type of institutional entity that Congress intended to lead securities class actions when it enacted the PSLRA in 1995. *See Leech*, 2006 WL 3690736, at *3 ("In general, courts have recognized that the PSLRA favors the selection of large institutional investors as lead plaintiff."). *See also, In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (legislative intent behind the PSLRA was to encourage large institutional investors to serve as lead plaintiff). Therefore, "as an institutional investor which has sustained large losses, [the Inter-Local Pension Fund] has both the ability and incentive to represent the class vigorously." *Sonus Networks, Inc.*, 2006 WL 3827441, at *2.

## II.    The Court Should Approve the Inter-Local Pension Fund's Selection of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *See also, In re*

*Lernout & Hauspie Sec. Litig.* at 46-47 ("While the Court should not be a rubberstamp, it should give the lead plaintiff group's choice some weight."). " 'Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class.' " *Leech*, 2006 WL 3690736, at *4, quoting *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305 (S.D. Ohio 2005). In that regard, the Inter-Local Pension Fund has selected and retained the law firm of Spector Roseman Kodroff & Willis, P.C. to serve as lead counsel for the class and The Law Office of Mark B. Morse to serve as liaison counsel for the class. As abundantly illustrated in its firm biography, SRKW has extensive experience in the areas of securities and class action litigation, and has successfully prosecuted numerous securities fraud actions and obtained excellent results on behalf of defrauded investors across the country and around the world. With twenty-five years of litigation experience, Mark B. Morse, principal of The Law Office of Mark B. Morse, has practiced law throughout the state and federal court systems in Rhode Island and has written and argued appeals to the United States First Circuit Court of Appeals, giving him an intimate familiarity with Rhode Island procedural and substantive law. *See* Willis Decl., Exhibits C and D.

SRKW's reputation for excellence has been recognized on numerous occasions by courts – including those in this Circuit – that have appointed the firm as lead counsel in major securities class actions. *See, e.g. Welmon, et al. v. Chicago Bridge & Iron Co. N.V., et al.*, No. 06-cv-01283-LTD (S.D.N.Y.) (appointed co-lead counsel); *In re SCOR Holding (Switzerland) AG Litigation*, No. 04-cv-07897-DLC (S.D.N.Y.) (appointed co-lead counsel); *Ong v. Sears, Roebuck & Co.*, No. 03-cv-04142 (N.D. Ill.) (Pallmeyer, J.) (appointed co-lead counsel); *In re Alltel Corp. Shareholder Litigation*, Case No. 2975-CC (Chancery Ct. Del.) (appointed co-lead counsel); *Shore, et al. v. Ukropina, et al. (Pacific Enterprises, Inc.)*, Case No. BC047961 (Super.

Ct. Cal.) (appointed lead counsel). *See also, O'Brien v. Ashcroft (Tyco Corp. Derivative Litigation)*, No. 03-E-0005 (N.H. Super. Ct.); *In re GTECH Holdings Corp. Securities Litigation*, Master File No. 94-0294-P (D. R.I.); *Lucia v. Prospect Street High Income Portfolio, Inc.*, No. 90-cv-10781-ADM (D. Mass.); *Miller v. New America High Income Fund*, No. 90-cv-10782-ADM (D. Mass.); *Harad, et al. v. Wedgestone Financial, et al.*, No. 89-cv-0987-WJS (D. Mass.); *Goldberg v. Americana Hotels and Realty Corp.*, No. 86-cv-3166-WGY (D. Mass.); *In re GCA Corporation Securities Litigation*, C.A. No. 85-4693-C (D. Mass.). Indeed, SRKW was appointed to serve as Lead Counsel by Judge Saris of the District of Massachusetts in massive litigation involving the pharmaceutical industry and the marketing of drugs using the average wholesale price. *See In re Pharmaceutical Industry Average Wholesale Price Litigation*, MDL Docket No. 1456 (D. Mass.). Further, in the related case of *New England Carpenters Health and Welfare Fund, et al. v. First DataBank*, the court found that lead counsel, including SRKW, "***have been excellent in this complex, hard fought litigation*** … ." *New England Carpenters Health and Welfare Fund, et al v. First DataBank*, 05-cv-11148-PBS, 2009 WL 2408560, *2 (D. Mass. Aug. 3, 2009). *See also, In re Lupron Marketing and Sales Practices Litigation*, MDL No. 1430 (D. Mass.); *In re Relafen Antitrust Litigation*, No. 01-cv-12239-WGY (D. Mass.). Further, SRKW and Mark B. Morse have the skill and knowledge to enable them to prosecute the Action effectively and expeditiously.

Accordingly, the court should approve the Inter-Local Pension Fund's selection of SRKW as Lead Counsel for the class and The Law Office of Mark B. Morse as Liaison Counsel for the class.

## CONCLUSION

For all the foregoing reasons, the Inter-Local Pension Fund respectfully requests that this Court: (i) appoint the Inter-Local Pension Fund as Lead Plaintiff in the Action; (ii) approve the Inter-Local Pension Fund's selection of Spector Roseman Kodroff & Willis, P.C. as Lead Counsel and The Law Office of Mark B. Morse as Liaison Counsel for the class; and (iii) grant such other relief as the Court may deem just and proper.

Dated: October 13, 2009

Respectfully submitted,

**THE LAW OFFICE OF MARK B. MORSE**

By:  /s/ Mark B. Morse
Mark B. Morse, Esq.
420 Angell Street
Providence, RI 02906
Tel: (401) 831-0555
Fax: (401) 273-0937
mark@morselawoffice.com
ID #3003

*Liaison Counsel*

**SPECTOR ROSEMAN KODROFF & WILLIS, P.C.**
Mark S. Willis, Esq.
Mark Bogen, Esq.
1101 Pennsylvania Avenue, NW
Suite 600
Washington, DC 20004
Tel: (202) 756-3600
Fax: (202) 756-3602

**- and-**

Robert M. Roseman, Esq.
Andrew D. Abramowitz, Esq.
Rachel E. Kopp, Esq.
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611

***Proposed Lead Counsel***