UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | : : : : | |
| Plaintiff, | : : | Civil Action No. 09-cv-00367 |
| v. | : : : | CLASS ACTION |
| TEXTRON INC., et al. | : : | |
| Defendants. | : : | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

DEFENDANTS
By their attorneys,

GIBSON, DUNN & CRUTCHER LLP
Mitchell A. Karlan (*pro hac vice*)
Brian M. Lutz (*pro hac vice*)
200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000

JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
procha@apslaw.com
NICOLE J. DULUDE (#7540)
ndulude@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Tel:  401-274-7200
Fax: 401-351-4607

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .............................................................................................................3

    I.    The Section 10(b) Claim Cannot Survive Against Any Defendant ....................3

        A.    Textron's Disclosures And Plaintiff's Own Allegations Make
             Clear That There Were No False Or Misleading Statements Or
             Omissions ...........................................................................................3

             1.    Plaintiff Fails To Establish A False Or Misleading
                  Statement Concerning The Cessna Backlog ...................................3

             2.    Plaintiff Fails To Establish A False Or Misleading
                  Statement Concerning TFC .........................................................5

             3.    Plaintiff's Bare-Bones And Conclusory GAAP
                  Allegations Do Not Adequately Plead That Textron's
                  Financial Statements Were False ................................................7

             4.    Many Of The Alleged Misstatements Are Non-
                  Actionable Puffery Or Protected Forward-Looking
                  Statements ...............................................................................8

        B.    Plaintiff's "Kitchen Sink" Approach To Scienter Lacks The
             Particularity Required To Establish A Strong Inference Of
             Fraudulent Intent With Respect To Any Defendant ...............................10

             1.    Plaintiff Runs From Its Ineffectual Confidential
                  Witness Allegations ..................................................................12

             2.    Plaintiff's Argument That Defendants "Are Presumed
                  To Know" Or "Should Have Been Aware" That Their
                  Statements Were False Does Not Establish A Strong
                  Inference Of Scienter ................................................................13

              3.    The Departure Of French And Carter Raises No
                  Fraudulent Inference ................................................................17

              4.    Neither Of The Alleged "Motives" To Commit Fraud
                  Supports A Strong Inference of Scienter ....................................18

              5.    Plaintiff's Reliance On The Collective Scienter
                  Doctrine Is Misplaced ..............................................................20

        C.    Plaintiff Has Failed To Adequately Plead Loss Causation ....................21

    II.    The Section 20(a) Claim Must Be Dismissed ..............................................23

CONCLUSION ........................................................................................................24

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Aldridge v. A.T. Cross Corp.*,
   284 F.3d 72 (1st Cir. 2002) .............................................................................. 7, 10

*Ark. Pub. Employees Ret. Sys. v. GT Solar Int'l, Inc.*,
   No. 08-cv-312-JL, 2009 WL 3255225  (D.N.H. Oct. 7, 2009) ................................. 5

*Baron v. Smith*,
   380 F.3d 49 (1st Cir. 2004) ..................................................................................... 9

*Berson v. Applied Signal Tech., Inc.*,
   527 F.3d 982 (9th Cir. 2008) ............................................................................. 5, 14

*Campo v. Sears Holdings Corp.*,
   No. 09-3589-cv, 2010 WL 1292329 (2d Cir. Apr. 6, 2010) .................................. 20

*City of Brockton Ret. Sys. v. Shaw Group, Inc.*,
   540 F. Supp. 2d 464 (S.D.N.Y. 2008) ...................................................... 11, 13, 14

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
   --- F. Supp. 2d ---, C.A. No. 1:08-11889-JLT, 2010 WL 1221402 (D. Mass. Mar. 25, 2010)  19

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
   No. 08-969, 2010 WL 1994693 (D. Del. May 18, 2010) ................................. 15, 18

*Colby v. Hologic, Inc.*,
   817 F. Supp. 204 (D. Mass. 1993) ........................................................................... 9

*Crowell v. Ionics, Inc.*,
   343 F. Supp. 2d 1 (D. Mass. 2004) ....................................................................... 15

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) .............................................................................................. 23

*Elam v. Neidorff*,
   544 F.3d 921 (8th Cir. 2008) ................................................................................ 17

*Fitzer v. Sec. Dynamics Tech., Inc.*,
   119 F. Supp. 2d 12 (D. Mass. 2000) ..................................................................... 13

*Frank v. Dana Corp.*,
   649 F. Supp. 2d 729 (N.D. Ohio 2009) ................................................................. 18

*Freudenberg v. E*Trade Fin. Corp.*,
   --- F. Supp. 2d ---, No. 07 Civ. 8538, 2010 WL 1904314 (S.D.N.Y. May 11, 2010) ............... 5

*Garber v. Legg Mason, Inc.*,
    537 F. Supp. 2d 597 (S.D.N.Y. 2008) ................................................................. 6

*Greebel v. FTP Software, Inc.*,
    194 F.3d 185 (1st Cir. 1999)........................................................................ 7, 19

*Gross v. Summa Four, Inc.*,
    93 F.3d 987 (1st Cir. 1996)............................................................................. 7

*Hall v. Children's Place Retail Stores, Inc.*,
    580 F. Supp. 2d 212 (S.D.N.Y. 2008) .............................................................. 5

*In re Bally Total Fitness Sec. Litig.*,
    No. 04 C 3530, 2006 WL 3714708 (N.D. Ill. July 12, 2006) ................................ 15

*In re Boston Scientific Corp. Sec. Litig.*,
    2010 WL 1704043 (D. Mass. Apr. 27, 2010) ..................................................... 20

*In re Countrywide Fin. Corp.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................ 22

*In re Credit-Suisse-AOL Sec. Litig.*,
    465 F. Supp. 2d 34 (D. Mass. 2006) ................................................................ 21

*In re Cytyc Corp. Sec. Litig.*,
    No. Civ. A. 02-12399-NMG, 2005 WL 3801468 (D. Mass. Mar. 2, 2005) .............. 9

*In re Daou Sys., Inc.*,
    411 F.3d 1006 (9th Cir. 2005) ....................................................................... 21

*In re Elan Corp. Sec. Litig.*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008) .............................................................. 12

*In re ESpeed, Inc. Sec. Litig.*,
    457 F. Supp. 2d 266 (S.D.N.Y. 2006) .............................................................. 15

*In re First Marblehead Corp. Sec. Litig.*,
    639 F. Supp. 2d 145 (D. Mass. 2009) ............................................................... 5

*In re IAC/InteractiveCorp. Sec. Litig.*,
    478 F. Supp. 2d 574 (S.D.N.Y. 2007) .............................................................. 20

*In re IMAX Sec. Litig.*,
    587 F. Supp. 2d 471 (S.D.N.Y. 2008) .............................................................. 21

*In re Moody's Corp. Sec. Litig.*,
    599 F. Supp. 2d 493 (S.D.N.Y. 2009) .............................................................. 14

*In re Number Nine Visual Tech. Corp. Sec. Litig.*,
  51 F. Supp. 2d 1 (D. Mass. 1999) ........................................................................ 7

*In re Parametric Tech. Corp. Sec. Litig.*,
  300 F. Supp. 2d 206 (D. Mass. 2001) ............................................................... 9, 10

*In re PeopleSoft, Inc., Sec. Litig.*,
  No. C 99-00472 WHA, 2000 WL 1737936 (N.D. Cal. May 25, 2000) ................... 16

*In re PerkinElmer, Inc. Sec. Litig.*,
  286 F. Supp. 2d 46 (D. Mass. 2003) ..................................................................... 6

*In re Radian Sec. Litig.*,
  612 F. Supp. 2d 594 (E.D. Pa. 2009) ........................................................ 12, 15, 20

*In re Scottish Re Group Sec. Litig.*,
  524 F. Supp. 2d 370 (S.D.N.Y. 2007) ................................................................. 16

*In re Sears, Roebuck and Co. Sec. Litig.*,
  291 F. Supp. 2d 722 (N.D. Ill. 2003) .................................................................. 15

*In re Sec. Capital Assurance Ltd. Sec. Litig.*,
  No. 07 Civ. 11086 (DAB), 2010 WL 1372688 (S.D.N.Y. Mar. 31, 2010) ............. 22

*In re Sipex Corp. Sec. Litig.*,
  No. C 05-00392 WHA, 2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) ................... 18

*In re Sonus Networks, Inc. Sec. Litig.*,
  2006 WL 1308165 (D. Mass. May 10, 2006) ................................................. 11, 18

*In re StockerYale Sec. Litig.*,
  453 F. Supp. 2d 345 (D.N.H. 2006) .................................................................... 21

*In re Stone & Webster, Inc. Sec. Litig.*,
  414 F.3d 187 (1st Cir. 2005) ............................................................................... 7

*In re Stone & Webster, Inc., Sec. Litig.*, 253 F. Supp. 2d 102, 128-129 (D. Mass. 2003), *aff'd in part and vacated in part on other grounds*, 414 F.3d 187 (1st Cir. 2005) .............................. 19

*In re Synchronoss Sec. Litig.*,
  --- F. Supp. 2d ---, C.A. No. 08-4437 (GEB), 2010 WL 1409664 (D.N.J. Apr. 7, 2010) ........ 10

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  MDL No. 02-1355-B, 02-266-B, 2004 WL 2348315 (D.N.H. Oct. 14, 2004) .......... 7

*In re Washington Mut., Inc. Sec., Deriv. and ERISA Litig.*,
  Nos. 2:08-md-1919 MJP, C08-387 MJP, 2009 WL 3517630 (W.D. Wash. Oct. 27, 2009) .... 14

*In re Westinghouse Sec. Litig.*,
    90 F.3d 696 (3d Cir. 1996) ........................................................................................ 6

*Indiana Electrical Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
    537 F.3d 527 (5th Cir. 2008) ................................................................................... 14

*Isham v. Perini Corp.*,
    665 F. Supp. 2d 28 (D. Mass. 2009) ................................................................. 11, 19

*King County v. IKB Deutsche Industriebank AG*,
    No. 09 Civ. 8387 (SAS), 2010 WL 1702196 (S.D.N.Y. Apr. 26, 2010)................. 22

*Konkol v. Diebold*,
    590 F.3d 390 (6th Cir. 2009) ................................................................................... 17

*Lattanzio v. Deloitte & Touche LLP*,
    476 F.3d 147 (2d Cir 2007) ..................................................................................... 22

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) .................................................................................... 22

*Leykin v. AT&T Corp.*,
    423 F. Supp. 2d 229 (S.D.N.Y. 2006) .................................................................... 21

*Lirette v. Shiva Corp.*,
    27 F. Supp. 2d 268 (D. Mass. 1998) ....................................................................... 14

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
    513 F.3d 702 (7th Cir. 2008) ................................................................................... 15

*Malin v. XL Capital, Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007) ..................................................................... 18

*New Jersey Carpenters Pension & Annuity Funds v. Biogen Idec Inc.*,
    537 F.3d 35 (1st Cir. 2008)...................................................................................... 13

*Ong v. Sears, Roebuck & Co.*,
    No. 03 C 4142, 2006 U.S. Dist. LEXIS 73801 (N.D. Ill. Sept. 27, 2006).............. 21

*Panther Partners, Inc. v. Ikanos Comm., Inc.*,
    538 F. Supp. 2d 662 (S.D.N.Y. 2008) ...................................................................... 3

*Plotkin v. IP Azess Inc.*,
    407 F.3d 690 (5th Cir. 2005) ................................................................................... 18

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) ...................................................................................... 5

*Sekuk Global Enters. v. KVH Indus., Inc.*,
   No. Civ. A. 04-306 ML, 2005 WL 1924202 (D.R.I. Aug. 11, 2005) ........................................ 10

*Sharenow v. Impac Mortgage Holdings, Inc.*,
   --- F.3d ---, C.A. No. 09-55533 (9th Cir. June 29, 2010) ......................................... 11

*Shaw v. Digital Equip. Corp.*,
   82 F.3d 1194 (1st Cir. 1996) ......................................... 17

*Silverman v. Motorola, Inc.*,
   No. 07 C 4507, 2008 WL 4360648 (N.D. Ill. Sept. 23, 2008) ................................................. 21

*Stiegele v. Bailey*,
   C.A. No. 05-10677-MLW, 2007 WL 4197496 (D. Mass. Aug. 23, 2007) ............................. 20

*Stumpf v. Garvey*,
   02-MDL-1335-PB, 2005 WL 2127644 (D.N.H. Sept. 2, 2005) ............................................. 22

*Swack v. Credit Suisse First Boston*,
   383 F. Supp. 2d 223 (D. Mass. 2004) ......................................... 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ......................................... 2, 10, 11

*W. R. Carney v. Cambridge Tech. Partners, Inc.*,
   135 F. Supp. 2d 235 (D. Mass. 2001) ......................................... 9, 14

*Wieland v. Stone Energy Corp.*,
   C.A. No. 05-2088, 2008 WL 2903178 (W.D. La. Aug. 17, 2007) ......................................... 6

*Wilson v. Microfinancial, Inc.*,
   C.A. No. 03-11883-RGS, 2006 WL 1650971 (D. Mass. June 13, 2006) ............................. 12

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ......................................... 10, 18

*Zucker v. Quasha*,
   891 F. Supp. 1010 (D.N.J. 1995) ......................................... 8

## Rules

Fed. R. Civ. P. 12(b)(6) ......................................... 24

**PRELIMINARY STATEMENT**

Plaintiff's essential argument in its opposition memorandum amounts to this: during the relevant period, when the economy was strong and Textron's businesses were performing at record levels, defendants made optimistic statements about the Cessna backlog and TFC's portfolio of finance receivables. When the economy crumbled at the end of 2008, Cessna's backlog and TFC's portfolio suffered setbacks, and Textron's stock price, like the stock price of many other public companies, declined precipitously. According to plaintiff, because Cessna's backlog and TFC's portfolio fell well short of the performance that defendants had expected and failed to insulate Textron from the economic tumult, defendants must have known that their class period statements about Cessna and TFC were false.

Plaintiff's Complaint, which is premised on this set of allegations, must be dismissed for at least four independent reasons. First, none of the challenged statements was false or misleading. While plaintiff claims that there must have been fraud because Cessna's backlog and TFC's portfolio of finance receivables failed to live up to defendants' stated expectations, what is missing is any particularized allegation, as required under the PSLRA, demonstrating why each statement in question was untrue at the time it was made. Indeed, during the relevant period, Textron disclosed that the customer cancellations and deferrals might weaken Cessna's backlog and that TFC's portfolio was weakening in the turbulent economic environment – the precise challenges to Cessna and TFC that plaintiff claims were not disclosed. Plaintiff's inability to overcome these disclosures or to point to facts in the Complaint that demonstrate that each statement was false at the time it was made, means that plaintiff has failed to sufficiently plead a false or misleading statement.

Second, plaintiff's superficial arguments that defendants "should have been aware" or are "presumed to know" that their statements were false or misleading fall well short of the "powerful" and "cogent" inference of scienter that is required under *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 310 (2007). Recognizing that none of the 23 "confidential witnesses" is alleged to have had *any* contact with the Individual Defendants relating to the issues in the Complaint,[1] plaintiff all but abandons these witnesses as a source of pleading scienter. Indeed, even if the conclusory allegations from these witnesses were true, there still are no facts pled that give rise to a strong inference of scienter with respect to a single defendant. Plaintiff is left arguing that, despite allegations that individually fall well short of establishing a strong inference of scienter as to any defendant, when the allegations are lumped together and considered cumulatively (rather than as to each specific defendant), there is enough to suggest that the defendants must have known that their statements were false or misleading. Plaintiff's argument is untenable and contrary to established law. Indeed, no matter how the allegations in the Complaint are considered – individually or cumulatively – what is clear is that plaintiff can point to no particularized factual allegations in the pleading, as required under the PSLRA and *Tellabs*, demonstrating that it is "highly likely" that any defendant knew or consciously ignored that any of the statements in question were false or misleading.

Third, plaintiff seeks to write the loss causation requirement out of Section 10(b) by disclaiming any obligation to plead facts demonstrating that the alleged loss was caused by defendants' fraud rather than the massive economic downturn that impacted many public

---

[1] This reply memorandum adopts the definitions used in defendants' opening memorandum ("Def. Br."). References to plaintiff's opposition memorandum are denoted "Opp. at ___." All references in the form (Ex. __) are to the exhibits of the Lutz Declaration ("Lutz Decl.") accompanying defendants' opening memorandum of law, and (¶ __) are to the Complaint.

companies at the precise time of plaintiff's alleged loss.  When the loss causation requirement

under Section 10(b) is properly described, it is clear that plaintiff's allegations, which

implausibly assume that the Great Recession had *no effect* on Textron's stock price, fall short of

the mark.

Fourth, the Section 20(a) claim must be dismissed against the Individual Defendants

because plaintiff fails to adequately allege a primary violation by Textron or TFC.

## ARGUMENT

**I.      The Section 10(b) Claim Cannot Survive Against Any Defendant**

**A.      Textron's Disclosures And Plaintiff's Own Allegations Make Clear
That There Were No False Or Misleading Statements Or Omissions[2]**

**1.      Plaintiff Fails To Establish A False Or Misleading Statement
Concerning The Cessna Backlog**

Plaintiff concedes that Textron disclosed in 2007 and 2008 that orders in the Cessna

backlog could be cancelled and that delivery of orders could be delayed at a customer's request.

*See* Opp. at 19-20.  This is the very risk that plaintiff claims was not disclosed – that orders were

"contingent" because they were "subject to cancellation."  ¶¶ 6, 128-133, 137; *see Panther

Partners, Inc. v. Ikanos Comm., Inc.*, 538 F. Supp. 2d 662, 670-71 (S.D.N.Y. 2008) (no material

omission when risk disclosure "clearly identifies the risk later realized").

Plaintiff claims that Textron's express disclosure was "too late," (Opp. at 23 n.5), but

critically, plaintiff fails to identify any facts to support its assertion that "cancellations and

deferrals [were] soaring throughout the Class Period . . . ."  Opp. at 9.  At most, the Complaint

---

[2]  Plaintiff makes no effort to refute defendants' argument that the statements by defendants
Wilburne, Cullen, or Butera are not actionable or that there are no allegations of scienter as to
these defendants.  *See* Def. Br. at 26 n.13, 27 n.14, 37 n.18, and 44 n.21.  These three
defendants must be dismissed.

alleges that order cancellations began during the late-summer of 2008 (¶ 140), with undelivered planes accumulating in Fall 2008 (*id.*), and that "during the Class Period," Cessna attempted to work with its customers to defer delivery on their orders rather than cancel orders altogether.

¶ 55.  All of these facts were timely disclosed, as was the risk that weak economic conditions could have an adverse impact on Cessna's business,[3] including the cancellation of orders.  In mid-July 2008, Campbell noted during a conference call that Cessna had received a "[v]ery low number" of cancellations and requests from a few customers to defer their orders.  ¶ 201.  During the Company's next public statements in October 2008 – after the collapse of Lehman Brothers – Campbell stated that new orders had dipped (¶ 224), that Cessna had not yet experienced "noteworthy" cancellations (¶ 226), but was taking a "wait and see attitude" (¶ 224), and that Cessna was talking to its customers to see whether any wanted to push back their delivery dates. *Id.* at ¶ 228.[4]  This Court should not permit plaintiff to invent a false or misleading statement by

---

[3] For example, the following risk factor was included in Textron's Annual Report on Form 10-K for the fiscal year ended December 29, 2007:

> **Delays in aircraft delivery schedules or cancellation of orders may adversely affect our financial results.**
>
> *Aircraft customers*, including sellers of fractional share interests, *may respond to weak economic conditions by delaying delivery of orders or canceling orders*. Weakness in the economy may result in fewer hours flown on existing aircraft and, consequently, lower demand for spare parts and maintenance. Weak economic conditions also may cause reduced demand for used business jets or helicopters. We may accept used aircraft on trade-in that would be subject to fluctuations in the fair market value of the aircraft while in inventory. *Reduced demand for new and used aircraft, spare parts and maintenance can have an adverse effect on our financial results of operations*.  Textron, Annual Report (Form 10-K), at 8 (Feb. 20, 2008), Ex. 3 (emphasis added).

[4] Because all of the allegedly undisclosed facts were, in fact, timely disclosed, the cases plaintiff cites involving belated disclosures are unavailing.  For example, unlike in *Berson v.*

[Footnote continued on next page]

ignoring or manipulating what Textron actually disclosed about Cessna.

> ### 2.   Plaintiff Fails To Establish A False Or Misleading Statement Concerning TFC

As shown in defendants' opening memorandum, Textron made explicit disclosures throughout 2008 that TFC's portfolio of finance receivables was weakening and that TFC had substantially increased its loss reserves to cover anticipated losses.  Def. Br. at 14-18.  Plaintiff cannot escape these critically important disclosures, so in its opposition memorandum, plaintiff tellingly ignores them.  *See In re First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145, 155 (D. Mass. 2009) ("A plaintiff fails to plead an actionable § 10(b) claim predicated on the concealment of information if that information was, in fact, disclosed.").[5]

---

[Footnote continued from previous page]

> *Applied Signal Tech., Inc.*, 527 F.3d 982, 984 (9th Cir. 2008), where the company had continued to count in its backlog "stop work" orders that already "had been halted and [were] likely to be lost forever," the allegedly undisclosed problem here (an increase in order cancellations from the backlog) had not occurred at the time of the challenged statements. Similarly, in *Hall v. Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 229 (S.D.N.Y. 2008), the court concluded that the company's disclosure that it was "ratcheting down" its remodeling efforts was false and misleading because it did not reveal that the company had already committed (but had not disclosed) various breaches of a contract that required such remodeling.  And in *Swack v. Credit Suisse First Boston*, 383 F. Supp. 2d 223, 238 (D. Mass. 2004), the defendant failed to disclose specific conflicts of interest then existing between its investment banking business and its research function.

[5] All of the cases on which plaintiff relies are inapposite.  *See, e.g.*, *Ark. Pub. Employees Ret. Sys. v. GT Solar Int'l, Inc.*, No. 08-cv-312-JL, 2009 WL 3255225, at *2, 10  (D.N.H. Oct. 7, 2009) (when defendant issued press release the day after its IPO disclosing loss of biggest customer, there was a "'substantial likelihood' – if not absolute certainty" that defendants knew of, but failed to disclose, the customer defection at the time of the IPO prospectus, and "generalized statements about potential lost customers and sales" were insufficient warnings); *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (plaintiff failed to sufficiently allege any false or misleading statement); *Freudenberg v. E*Trade Fin. Corp.*, --- F. Supp. 2d ---, No. 07 Civ. 8538, 2010 WL 1904314, at *10-11 (S.D.N.Y. May 11, 2010) (falsity of statements clear when company disclosed that it was focused on originating mortgages with existing customers when in reality it was purchasing large pools of highly

[Footnote continued on next page]

Outside of TFC's lending to Cessna customers, the only allegations in plaintiff's Complaint concerning TFC's portfolio of finance receivables relate to TFC's Marine business and its Finance Company Services division – which together, as plaintiff admits, "accounted for a small percentage of TFC's portfolio of finance receivables . . . ."  Opp. at 24.[6]  Plaintiff does not dispute that Textron expressly disclosed the challenges facing these two divisions and also that Textron increased its loss reserves to cover anticipated losses in these divisions.  *See* Def. Br. at 28-32.  Instead, plaintiff conclusorily asserts – without any factual support – that the challenges facing these divisions were representative of larger problems at TFC.  Opp. at 24.  However, because (a) Textron disclosed that it was substantially increasing loan loss reserves to cover anticipated losses in its portfolio, particularly losses associated with its Marine and Finance Company Services divisions, and (b) the Complaint fails to identify additional facts that should have been disclosed, much less a duty to disclose such facts, the Complaint should be dismissed.

---

[Footnote continued from previous page]
 risky subprime loans); *Wieland v. Stone Energy Corp.*, C.A. No. 05-2088, 2008 WL 2903178, at *4 (W.D. La. Aug. 17, 2007) (defendants did not dispute falsity of statements).

[6]  Plaintiff's assertion that there is no bright-line rule for determining whether a given portion of a business is material is beside the point.  Opp. at 24.  It cannot be disputed that the smaller the impact of a given division on a business, the less likely it is that the performance of that division is something that a reasonable investor would deem important.  *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 714-15 (3d Cir. 1996).  The cases cited by  plaintiff either support defendants' position or are inapposite.  In *Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 613 (S.D.N.Y. 2008) the court concluded that an omission was "simply too small" as a percentage of the issuer's business "to be material as a matter of law."  In *In re PerkinElmer, Inc. Sec. Litig.*, 286 F. Supp. 2d 46, 53 (D. Mass. 2003), the court concluded that misstatements about a product that the defendant featured in press releases as a key to the company's future earning potential were material – a set of facts that bears no relation to this case.

### 3. Plaintiff's Bare-Bones And Conclusory GAAP Allegations Do Not Adequately Plead That Textron's Financial Statements Were False

Even assuming *arguendo* that the reserves were inadequate at the time they were established, plaintiff argues that all that is necessary to establish a false and misleading statement is to allege that a company failed to properly set loss reserves. That is not the law. Plaintiff's conclusory allegation that Textron's financial statements violated GAAP – which lacks any specificity concerning, at a minimum, when loss reserves should have been increased and the approximate level at which they should have been set – falls well short of the specificity required to plead a false statement based on an alleged GAAP violation. *See In re Stone & Webster, Inc. Sec. Litig.*, 414 F.3d 187, 199 (1st Cir. 2005) (dismissing Section 10(b) claim based on GAAP violation when complaint gave "no indication whatsoever what the size of the alleged overstatement of current profits was"); *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 203-04 (1st Cir. 1999) ("complete absence" of "such basic details as the approximate amount by which revenues and earnings were overstated" is "indicative of the excessive generality of" allegations that company's financial statements violated GAAP); *Gross v. Summa Four, Inc.*, 93 F.3d 987, 996 (1st Cir. 1996) (dismissing Section 10(b) claim based on GAAP violation when plaintiff "failed to allege any particulars to support his general allegation of inflated earnings").[7]

---

[7] The cases cited by plaintiff either support defendants' position or are inapposite. *In re Tyco Int'l, Ltd. Multidistrict Litig.*, MDL No. 02-1355-B, 02-266-B, 2004 WL 2348315, at *10 (D.N.H. Oct. 14, 2004) is of no help to plaintiff because, there, the plaintiffs specifically pled "the amount by which the goodwill was overstated," and provided a "detailed description of the fraud schemes" – specific facts not alleged in this case. In *In re Number Nine Visual Tech. Corp. Sec. Litig.*, 51 F. Supp. 2d 1, 26-27 (D. Mass. 1999), the Court did not even address the plaintiffs' failure to plead the amount of the alleged overstatement for purposes of the Section 10(b) claim. And in *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 80-81 (1st Cir. 2002), the court concluded that there was extensive evidence that the company should have

[Footnote continued on next page]

In an attempt to downplay the increase in TFC's loss reserves, plaintiff claims that the increase "was not surprising given [TFC's] increased loan volume." Opp. at 26. As Textron's public filings made clear, however, the rate of increase in TFC's loss reserves in 2008 vastly exceeded the rate of any quarterly increase in the size of TFC's portfolio. *See* Ex. 26 at 68-69; Ex. 30 at 15, 22; Ex. 31 at 17, 24; and Ex. 32 and 17, 30; *see also Zucker v. Quasha*, 891 F. Supp. 1010, 1018 (D.N.J. 1995) (dismissing securities complaint with prejudice when "the Prospectus and Registration Statement . . . contradict Plaintiff's allegations"). Moreover, plaintiff's allegation that Textron's financial statements were non-GAAP compliant because Textron maintained loss reserves in 2008 at "historic levels" (¶ 287) is refuted by Textron's substantial increase in loss reserves over prior years – undisputed facts that plaintiff, again, simply ignores in the opposition memorandum.[8]

For all these reasons, plaintiff falls well short of adequately pleading the falsity of Textron's financial statements.

### 4.    Many Of The Alleged Misstatements Are Non-Actionable Puffery Or Protected Forward-Looking Statements

Plaintiff erroneously asserts that defendants have been "unspecific" about which statements they believe are puffing or protected forward-looking statements. Opp. at 27. In fact,

---

[Footnote continued from previous page]
set a reserve, but did not, and thus concluded that failing to identify the specific amount of the overstatement was not fatal to the complaint. Here, by contrast, the Complaint lacks any specific allegations demonstrating that an increase in reserves ever was required.

[8] Plaintiff's attempt to cast a negative light on the $1.7 billion in finance receivables classified as "held for sale" is a red herring. Opp. at 26. As Textron announced on December 22, 2008, TFC would be exiting its non-captive business through a combination of orderly liquidation and selected sales, so those assets in fact *were held for sale. See* Ex. 22; *see also* Textron, Annual Report (Form 10-K), at 19 (Feb. 26, 2009), Ex. 2.

consistent with recognized practice in the First Circuit, defendants' opening memorandum identified by paragraph number each of the statements that are mere puffery or protected forward-looking statements (*see* Def. Br. at 35 n.16) and gave specific examples of each.  *Id.* at 35-37; *In re Parametric Tech. Corp. Sec. Litig.*, 300 F. Supp. 2d 206, 213 (D. Mass. 2001) (PSLRA requires "'statement-by-statement' analysis," with "closely related" statements "grouped together for consideration without diminishing the individualized attention needed to be given to each").

Plaintiff asserts, moreover, that "Defendants' argument for safe harbor protection is premature."  Opp. at 29.  Plaintiff again is wrong.  Courts in the First Circuit routinely grant motions to dismiss securities law claims based on protected forward-looking statements.[9]

Plaintiff's final dodge is an argument that statements about the Cessna backlog were not puffery or protected forward-looking statements.  Opp. at 29-30.  Defendants do not argue that statements concerning the size and/or strength of the backlog were forward-looking statements. Instead, as set forth in defendants' opening memorandum (Def. Br. at 35-37), the dozens of statements about, for example, Textron's future "growth," "visibility," and "earnings and cash flow outlook" must be dismissed as puffery, protected forward-looking statements, or both.  *See, e.g.*, *In re Cytyc Corp. Sec. Litig.*, No. Civ. A. 02-12399-NMG, 2005 WL 3801468, at *25 (D. Mass. Mar. 2, 2005) (dismissing securities claim based on puffery – "[w]e believe the achievements of 2001 put Cytyc in a solid position to build on the momentum of the past year");

---

[9] *See, e.g.*, *Baron v. Smith*, 380 F.3d 49, 53-54 (1st Cir. 2004) (affirming dismissal of securities claim based on protected forward-looking statement); *W. R. Carney v. Cambridge Tech. Partners, Inc.*, 135 F. Supp. 2d 235, 251 (D. Mass. 2001) (dismissing complaint based on forward-looking statement – "[o]ur outlook for 1999 remains upbeat"); *Colby v. Hologic, Inc.*, 817 F. Supp. 204, 210-11 (D. Mass. 1993) ("long-term prospects are bright" was protected forward-looking statement).

*In re Parametric*, 300 F. Supp. 2d at  217, 220-21 (dismissing securities claim based on puffery and forward-looking statements – that company had "confidence in the fundamental strength of our business and on our strong competitive position," and was "well positioned for growth").

### B.   Plaintiff's "Kitchen Sink" Approach To Scienter Lacks The Particularity Required To Establish A Strong Inference Of Fraudulent Intent With Respect To Any Defendant

Plaintiff tries to obscure its inability to plead specific facts establishing a strong inference of scienter with respect to each defendant by asking this Court to consider its allegations in the Complaint "holistically" or "cumulatively."  Opp. at 31, 46.[10]  As courts have made clear, even taking all of the allegations in a complaint together as true, a securities fraud claim still will not survive unless there are individual factual allegations demonstrating that it is "highly likely" (*Aldridge*, 284 F.3d at 82) or "highly probable" (*In re Parametric*, 300 F. Supp. 2d at 222) that each defendant engaged in fraud.  *See In re Synchronoss Sec. Litig.*, --- F. Supp. 2d ---, C.A. No. 08-4437 (GEB), 2010 WL 1409664, at *35 n.66 (D.N.J. Apr. 7, 2010) ("Plaintiffs appear to be under the impression that a multitude of allegations, each of which is insufficient individually, might nonetheless state a sufficient 'collective claim' under the holding of *Tellabs*. . . . Plaintiffs err.  If anything, *Tellabs* stands for the diametrically opposite proposition.") (citing *Tellabs*, 551 U.S. at 324); *see also Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1008 (9th Cir. 2009) ("Although *Tellabs* instructs us to view such compilations [of allegations] holistically,

---

[10]  Plaintiff's reliance in the opposition memorandum on *Sekuk Global Enters. v. KVH Indus., Inc.*, No. Civ. A. 04-306 ML, 2005 WL 1924202 (D.R.I. Aug. 11, 2005) is misplaced.  There, the plaintiff made detailed allegations of a "large-scale fraud," including particularized allegations that one senior executive of the corporate defendant ordered the fictitious sales that were at the heart of the alleged fraud.  *Id.* at *15.  There are no such particularized allegations in this case, and certainly no allegations linking the Individual Defendants – or any other senior executives of Textron or TFC – to any alleged fraud.

even such a comprehensive perspective of Zucco's complaint cannot transform a series of inadequate allegations into a viable inference of scienter."); *City of Brockton Ret. Sys. v. Shaw Group, Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008) (rejecting "amalgam" of scienter allegations and plaintiff's argument that "zero plus zero plus zero plus zero plus zero adds up to something" when "none of the matters cited by plaintiffs admits of an inference of fraud").  In other words, group pleading of scienter fails to meet the heightened pleading standard required under the PSLRA.  *In re Sonus Networks, Inc. Sec. Litig.*, C.A. No. 04-10294-DPW, 2006 WL 1308165, at *13 (D. Mass. May 10, 2006) ("In evaluating this Complaint, I consider whether scienter is pleaded sufficiently against Sonus and each individual Defendant independently.").

Here, plaintiff has failed to provide the necessary particularized factual basis for concluding that scienter has been adequately pled with respect to *any* defendant.  Indeed, by far the strongest inference that may be drawn from the Complaint is that the defendants did not – indeed, could not – anticipate the massive economic downturn that occurred in the fall of 2008 and its impact on both the Cessna backlog and TFC's portfolio of finance receivables.  Plaintiff's suggested contrary inference – that the defendants knew full well that their statements throughout the relevant period about the strength of the backlog and the performance of TFC's finance receivables were not true – is neither "cogent" nor "powerful" in light of the lack of supporting allegations and the much stronger, non-fraudulent inference.  *Tellabs*, 551 U.S. at 323; *Sharenow v. Impac Mortgage Holdings, Inc.*, --- F.3d ---, C.A. No. 09-55533 (9th Cir. June 29, 2010) ("At bottom, a non-fraudulent inference – namely that Impac's efforts to minimize risk exposure in the mortgage industry came too late to avoid large losses – is more compelling than an inference that Impac's officers intended to defraud investors by falsely claiming to tighten its underwriting guidelines."); *Isham v. Perini Corp.*, 665 F. Supp. 2d 28, 35 (D. Mass. 2009)

11

(rejecting Section 10(b) claim when non-fraudulent inferences were "more compelling than any inference of culpable scienter").

### 1. Plaintiff Runs From Its Ineffectual Confidential Witness Allegations

Plaintiff scarcely mentions its confidential witnesses in its opposition – and for good reason.  As plaintiff concedes, "these witnesses may not have directly interacted with Textron's executives on every issue."  Opp. at 44.  This concession does not go far enough:  the confidential witnesses are not alleged to have had *any* interaction with the Individual Defendants on *any* issue in this case.  *See In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 220-21 (S.D.N.Y. 2008) (allegations based on confidential witnesses insufficient to establish scienter where no facts pled that confidential sources would have known what information was communicated to senior executives).

Where, as here, a plaintiff's confidential witnesses were not in a position to know what any defendant knew, allegations based on information provided by the confidential witnesses do not come close to establishing a strong inference of scienter.  *See, e.g.*, *Wilson v. Microfinancial, Inc.*, C.A. No. 03-11883-RGS, 2006 WL 1650971, at *5 (D. Mass. June 13, 2006) (dismissing securities claim based on confidential witnesses who had no basis for stating what defendants knew).[11]

---

[11] *See also In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 619-20 (E.D. Pa. 2009) (dismissing securities claim when confidential witnesses allegations "do[] not establish that the defendants knew or must have known that their statements presented a danger of misleading buyers or sellers.  At best, this testimony only further establishes the declining conditions at [defendant's subsidiary] and in the market generally. . . . [This testimony] does not establish with specificity what the defendants knew at the times that they made particular

[Footnote continued on next page]

Despite calling its confidential witnesses "[c]hief among the various source materials referenced in the Complaint," (Opp. Br. at 19 n.4), all that plaintiff musters in its opposition memorandum are alleged conclusory statements from two of the 23 confidential witnesses that Carter was aware of the details of the Assured loan and had knowledge of TFC's Marine Division. Opp. at 44. Neither of these two witnesses, however, are even alleged to have had any contact with Carter. Moreover, the alleged conclusory statements by these two witnesses do not remotely suggest that Carter knew or should have known that the few statements attributed to him in the Complaint were false or misleading. *See* ¶¶ 213, 215; *see also* Def. Br. at 45-46. At most, they suggest that Carter was aware of a single troubled loan and the challenges facing one TFC division, which awareness, if anything, is meaningless to support plaintiff's allegations of wrongdoing. *See New Jersey Carpenters Pension & Annuity Funds v. Biogen Idec Inc.*, 537 F.3d 35, 52 n.18 (1st Cir. 2008) (rejecting as basis for scienter conclusory allegations from confidential witness).

Thus, the confidential witnesses offer no basis for finding a strong inference of scienter.

### 2.      Plaintiff's Argument That Defendants "Are Presumed To Know" Or "Should Have Been Aware" That Their Statements Were False Does Not Establish A Strong Inference Of Scienter

Plaintiff indiscriminately asserts that Campbell and French (but apparently no other defendant), by virtue of their "high-ranking positions at the Company," are "presumed to know" or "should have been aware" that their statements about TFC and the Cessna backlog were false. Opp. at 36-37. That is not the law. As courts repeatedly have made clear, allegations of

---

[Footnote continued from previous page]
     statements."); *Fitzer v. Sec. Dynamics Tech., Inc.*, 119 F. Supp. 2d 12, 39 (D. Mass. 2000); *City of Brockton*, 540 F. Supp. 2d at 473.

knowledge based on a defendant's position of seniority do not give rise to a strong inference of

scienter. *See Carney*, 135 F. Supp. 2d at 255 (D. Mass. 2001) ("attributing knowledge to a

defendant merely because of the defendant's status in a corporation[] generally fails as a method

of meeting the rigorous requirements for pleading scienter"); *Lirette v. Shiva Corp.*, 27 F. Supp.

2d 268, 283 (D. Mass. 1998) (rejecting scienter based on "general inferences that the defendants,

by virtue of their position within the company 'must have known' about the company's problems

when they undertook allegedly fraudulent actions").[12]

Plaintiff also erroneously asserts that Campbell and French are "presumed to know" that

their statements were false because they were "personally" and "intimately" involved with

"core" operations at Textron.  Opp. at 33-36.  This is not the law either.  *See, e.g.*, *Indiana

Electrical Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*, 537 F.3d 527, 535 (5th Cir.

2008) (executive position and "hands-on management style" insufficient to establish strong

inference of scienter); *City of Brockton*, 540 F. Supp. 2d at 473 ("It is not enough for a post-

---

[12] None of the cases on which plaintiff relies in support of its argument that it would be "absurd
to suggest" that the defendants in question did not know of the falsity of their statements
(Opp. at 37) present facts even close to this case.  In *In re Moody's Corp. Sec. Litig.*, 599 F.
Supp. 2d 493, 515 (S.D.N.Y. 2009), the company's CEO was alleged to have made a
"confidential slideshow" presentation containing statements that showed that his public
statements were false.  There is no such allegation or evidence in this case.  Similarly, in *In
re Washington Mut., Inc. Sec., Deriv. and ERISA Litig.*, Nos. 2:08-md-1919 MJP, C08-387
MJP, 2009 WL 3517630, at *6 (W.D. Wash. Oct. 27, 2009), the defendant was alleged to
have received specific reports that contained facts about the company's risk profile and risk
management processes that were inconsistent with the CEO's public statements.  And in
*Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 986-87 (9th Cir. 2008), the defendants
were alleged to have failed to disclose that "stop-work orders" were included in the
company's backlog.  The court concluded that because these stop work orders would have a
"devastating effect on the corporation's revenue," and because some involved "the
company's largest contract with one of its most important customers," it was implausible that
the senior management defendants were not aware of them.  *Id.* at 987, 988 n.5.

*Tellabs* plaintiff to allege that, because executives . . . were 'closely involved' in [defendant's]

business, one can strongly infer that they" knew their statements about the business were false.).

Courts routinely reject allegations of scienter based on a defendant's presumed

knowledge of a company's "core" operations. *See In re Bally Total Fitness Sec. Litig.*, No. 04 C

3530, 2006 WL 3714708, at *9 (N.D. Ill. July 12, 2006) (rejecting plaintiffs' reliance on "core

business" theory of scienter as "attempts at an end-run around the requirement that plaintiffs set

forth particularized facts to suggest that defendants acted knowingly and recklessly.  Plaintiffs

cannot rely on a 'must have known' theory.") (citations omitted); *City of Roseville Employees'*

*Ret. Sys. v. Horizon Lines, Inc.*, No. 08-969, 2010 WL 1994693, at *18 (D. Del. May 18, 2010)

(imputing knowledge based on "core activities" must be done "'cautiously' and only where

plaintiffs have pleaded 'particularized allegations showing that defendants had ample reason to

know of the falsity of their statements'") (quoting *In re Radian Sec. Litig.*, 612 F. Supp. 2d 594,

616 (E.D. Pa. 2009)); *In re ESpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 294 (S.D.N.Y. 2006)

("[t]o the extent that [the] 'core operations' method of pleading conscious misbehavior or

recklessness is viable after the PSLRA," plaintiff still must plead specific facts giving rise to

strong inference that statements were made with scienter).[13]

---

[13] None of the cases cited by plaintiff in support of the "core operations" theory is of any help to plaintiff, as each of those cases involved false or misleading statements about the company's principal product or the business that accounted for most of the company's income – facts that are absent from this case.  *See In re Sears, Roebuck and Co. Sec. Litig.*, 291 F. Supp. 2d 722, 724-725, 727 (N.D. Ill. 2003) (Sears' credit card division, whose contribution to Sears' overall operating income grew from 58% to 83% during the class period, was core operation); *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709 (7th Cir. 2008) (strong inference of scienter pled when false statements concerned company's "'flagship' product . . . and [its] heralded successor.  They were to Tellabs as Windows XP and Vista are to Microsoft."); *Crowell v. Ionics, Inc.*, 343 F. Supp. 2d 1, 4, 19 (D. Mass. 2004) (business that accounted for "the major portion of Ionics' consumer segment revenues

[Footnote continued on next page]

In an attempt to create the appearance of challenged statements relating to "core" operations, plaintiff resorts to misstating that "74% of the Company's loan portfolio was secured by Cessna and Bell aircraft." Opp. at 35. As plaintiff's own Complaint makes clear, however, 74% of *TFC's aircraft lending portfolio* (not TFC's overall lending portfolio) was secured by Cessna or Bell aircraft (¶ 212), and TFC's aircraft lending business represented but a quarter of TFC's portfolio during the relevant period. *See* Def. Br. at 11.

Plaintiff also argues that certain statements by Campbell and French concerning their analyses of the Cessna backlog and TFC's divisions amounted to "unequivocal admissions" that "undercut any claim that Campbell or French were unaware of the true facts impacting Textron's business." Opp. at 32-33. But, again, plaintiff offers not a single supporting fact that would suggest that, because Campbell and French at one point in time had purportedly analyzed the Cessna backlog and TFC portfolio, they knew or consciously ignored that their statements during the relevant period about these issues were false when made. Consequently, even if the Court may presume, for purposes of the motion to dismiss, that Campbell and French had knowledge about the Cessna backlog and the TFC portfolio, this allegation does not, without more, permit the Court to presume that they were aware of fraud or that their statements were false when made. Indeed, the most plausible inference to be drawn from these statements is that Campbell

---

[Footnote continued from previous page]

and assets both in the United States and abroad" was core operation); *In re PeopleSoft, Inc., Sec. Litig.*, No. C 99-00472 WHA, 2000 WL 1737936, at *4 (N.D. Cal. May 25, 2000) ("loss of major customers and the massive defects in their flagship products" supported strong inference of scienter). Finally, plaintiff's reliance on *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370, 393-94 (S.D.N.Y. 2007), is puzzling, as that case did not involve the core operations theory of scienter, but rather, allegations of scienter based on transactions that the individual defendants themselves structured and executed.

and French simply did not anticipate the dramatic economic upheaval that struck at the end of

2008 or the effect that it would have on Cessna's backlog and TFC's portfolio.

Thus, neither the law nor the facts support plaintiff's argument that this Court should

simply presume that defendants knew that their challenged statements were false.[14]

### 3.    The Departure Of French And Carter Raises No Fraudulent Inference

Plaintiff argues that the departure of French and Carter following the disclosure that TFC

would be exiting a portion of its lending business supports an inference that these defendants

engaged in fraud.  Plaintiff, however, points to no facts that would link these departures to any

fraudulent conduct, rather than, for example, the poor performance of TFC.  When a complaint

fails to allege facts that demonstrate a connection between the resignation or termination of

executives and their participation in fraudulent conduct – as plaintiff fails to do here – there can

be no inference of fraud based on the departure.  *See, e.g., Frank v. Dana Corp.*, 649 F. Supp. 2d

---

[14]  The alleged temporal proximity between positive statements about Cessna and TFC and the disclosure of challenges facing those businesses does not support a strong inference of fraudulent intent.  *See* Opp. Br. at 38.  Temporal proximity of an alleged false statement and the alleged revelation of the "truth" does not, standing alone, give rise to a strong inference of scienter.  *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1225 (1st Cir. 1996).  Moreover, the time gap between these statements and the alleged disclosure of the "truth" was not even particularly close; there were nearly three months between the positive statements about Cessna and TFC and the date on which plaintiff claims the "truth" began to "leak out" regarding these businesses.  *See Konkol v. Diebold*, 590 F.3d 390, 401 (6th Cir. 2009) (three days between statement and alleged revelation of "truth" insufficient standing alone to establish strong inference of scienter).  Nor may temporal proximity support an inference of scienter absent specific facts establishing that defendants knew or recklessly disregarded the falsity of their statements – and here, there are no such facts.  *Elam v. Neidorff*, 544 F.3d 921, 930 (8th Cir. 2008) (concluding that "[w]ithout more, inferring scienter from [] temporal proximity . . . is nothing more than speculation," and rejecting scienter based on allegedly false statement one month before revelation of "truth") (citation omitted).

729, 741 (N.D. Ohio 2009) ("[A] CFO whose watch ended in a company's foundering was hardly likely to remain on board.  Richter's sudden departure does not give rise to an inference of scienter on his part."); *Malin v. XL Capital, Ltd.*, 499 F. Supp. 2d 117, 162 (D. Conn. 2007) ("In the absence of facts connecting [senior executive defendants] to the alleged fraud, it is more likely that they were terminated and resigned as a result of company mismanagement, not securities fraud."); *City of Roseville*, 2009 WL 1994693, at *15-16 (same); *Zucco Partners*, 552 F.3d at 1001-02 (same).[15]

### 4.   Neither Of The Alleged "Motives" To Commit Fraud Supports A Strong Inference of Scienter

Without more, plaintiff argues that defendants were motivated to make misrepresentations about TFC because doing so would delay Textron's obligation to make payments to TFC under the Support Agreement.  Opp. at 40.  Once again, plaintiff fails to plead any facts to support this assertion.  In particular, plaintiff does not explain how the existence of the Support Agreement or Textron's obligations thereunder would have motivated the Individual Defendants to make false statements about TFC.  "For motive to support a strong inference of scienter the plaintiff should plead facts showing that the accused officer or director secured a particular 'concrete and personal benefit' from the alleged fraud."  *In re Sonus Networks,* 2006 WL 1308165, at *15 (rejecting scienter based on alleged motive and opportunity when CFO not

---

[15] Plaintiff purportedly relies on *Plotkin v. IP Azess Inc.*, 407 F.3d 690 (5th Cir. 2005), but that case did not even address whether executive departures may support an inference of scienter. *In re Sipex Corp. Sec. Litig.*, No. C 05-00392 WHA, 2005 WL 3096178, at *1 (N.D. Cal. Nov. 17, 2005), involved egregious accounting misconduct that forced a company to restate its financial statements and its audit committee to terminate employees, create new internal control functions, and implement an ethics and compliance training program for all employees.  That is not remotely analogous to the situation here.

alleged to have "realized any 'concrete benefits'" of alleged accounting fraud); *see also In re Stone & Webster, Inc., Sec. Litig.*, 253 F. Supp. 2d 102, 128-129 (D. Mass. 2003), *aff'd in part and vacated in part on other grounds*, 414 F.3d 187 (1st Cir. 2005) ("[T]he important consideration . . . is whether 'defendants benefitted in some concrete and personal way from the purported fraud.'") (citation omitted).  Plaintiff's inability to point to any personal benefit realized by the Individual Defendants with respect to the alleged delayed payments under the Support Agreement eliminates this alleged illicit motive as a basis for scienter.

Plaintiff also fails to provide any facts that would show that any defendant's stock sales were "unusual, well beyond the normal patterns of trading by [the] defendants."  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, --- F. Supp. 2d ---, C.A. No. 1:08-11889-JLT, 2010 WL 1221402, at *10 (D. Mass. Mar. 25, 2010) (quoting *Greebel*, 194 F.3d at 198).  Plaintiff fails to point to any trading outside the relevant period by Campbell, French, or the other "insiders" who are not defendants in this case,[16] so there could be no basis for determining whether the trading was unusual.  *See Isham*, 665 F. Supp. 2d at 37-38 (alleged insider trading does not support strong inference of scienter when no allegations of trading history).  Plaintiff also makes no allegation that this trading was conducted without Company approval or violated any internal Company trading policy.  Nor is the mere fact that the trading happened during the class period sufficient to show that it was "suspiciously timed."[17]  *See In re*

---

[16]  The alleged sales by non-defendant insiders cannot give rise to any inference of scienter, particularly when the Complaint lacks any information as to who these alleged insiders are or their connection to the alleged misstatements.  *See Dearborn Heights*, 2010 WL 1221402, at *11.

[17]  In addition to identifying no facts that would establish that French's trading was unusual or suspicious, plaintiff argues, based on a single unpublished decision, that French's sales made

[Footnote continued on next page]

*Radian Sec. Litig.*, 612 F. Supp. 2d at 612 (rejecting scienter based on insider sales when "plaintiffs do not point to any information to show whether or not this sale was unusual in scope or in timing, other than that it occurred during the class period").  Consequently, there are none of the requisite factual allegations to support plaintiff's conclusory assertions of motive.

### 5. Plaintiff's Reliance On The Collective Scienter Doctrine Is Misplaced

In the absence of allegations creating a strong inference of scienter as to the Individual Defendants, there can be no strong inference of scienter as to Textron or TFC.[18]  The First Circuit has not adopted the "collective scienter" method of pleading advanced by plaintiff, and district courts in this Circuit have specifically declined to apply the doctrine.  *See, e.g.*, *In re Boston Scientific Corp. Sec. Litig.*, 2010 WL 1704043, at *15 (D. Mass. Apr. 27, 2010).[19]  Here,

---

[Footnote continued from previous page]

pursuant to a 10b5-1 plan raise issues of good faith that cannot be resolved on a motion to dismiss.  This argument is contrary to the substantial weight of authority and should be rejected.  *See, e.g., In re IAC/InteractiveCorp. Sec. Litig.*, 478 F. Supp. 2d 574, 604 (S.D.N.Y. 2007) ("Because [defendant's] sales were part of a periodic divestment plan, the timing and amount of the sales do not raise a strong inference of scienter."); *Stiegele v. Bailey*, C.A. No. 05-10677-MLW, 2007 WL 4197496, at *13 (D. Mass. Aug. 23, 2007) (same).

[18]  Critically, plaintiff does not even allege that TFC itself made false or misleading statements.  Rather, TFC is named as a defendant because it is an alleged "direct and knowing source of many of the alleged false and misleading statements issued during the Class Period."  ¶ 19.  On this basis alone, the Section 10(b) claim must be dismissed against TFC.

[19]  Even the courts outside the First Circuit that have adopted the "collective scienter" doctrine conclude that collective scienter requires well-pled facts establishing a strong inference that senior management was aware that statements made on the corporation's behalf were false or misleading.  *See, e.g.*, *Campo v. Sears Holdings Corp.*, No. 09-3589-cv, 2010 WL 1292329, at *4 n.6 (2d Cir. Apr. 6, 2010).  Here, there are no specific allegations that any senior officer – including the Individual Defendants – knew or was reckless in not knowing the falsity of the alleged statements.  Thus, even if the collective scienter doctrine applied in the First

[Footnote continued on next page]

because there are insufficient allegations of scienter as to the Individual Defendants, plaintiff has

failed to plead a strong inference of scienter as to Textron or TFC.

### C.     Plaintiff Has Failed To Adequately Plead Loss Causation

Plaintiff also has failed to adequately plead loss causation.  The Complaint is devoid of

facts demonstrating that plaintiff's loss was caused by the alleged fraud rather than by the

massive economic downturn that drove down the stock price of countless securities during late-

2008.  In an effort to stave off dismissal, plaintiff argues that all that is required is "fair notice"

of its theory of loss.  Opp. at 47.[20]

As courts consistently have made clear, however, a plaintiff must plead facts that

demonstrate that *its loss* was caused by the alleged fraud rather than, for example, a market-wide

or industry-specific downturn.  *See Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 246 (S.D.N.Y.

2006) (the complaint "does not allege facts showing that it was the claimed concealment which

caused plaintiffs' losses, rather than the market-wide Internet stock collapse – nor any way to

separate the effect of the misstatements (if there was any) from the general collapse or other

causes.  Thus, there is no effective pleading of a loss caused by those misrepresentations.")

---

[Footnote continued from previous page]
   Circuit – and it does not – the Complaint still lacks factual allegations sufficient to establish
   the scienter of Textron or TFC.

[20]  Unlike this case, most of the cases cited by plaintiff did not involve the potential impact of
   any market-wide or industry-specific factors on a company's stock price.  *See Ong v. Sears,
   Roebuck & Co.*, No. 03 C 4142, 2006 U.S. Dist. LEXIS 73801 (N.D. Ill. Sept. 27, 2006); *In
   re Credit-Suisse-AOL Sec. Litig.*, 465 F. Supp. 2d 34 (D. Mass. 2006); *In re Daou Sys., Inc.*,
   411 F.3d 1006, 1025 (9th Cir. 2005); *Silverman v. Motorola, Inc.*, No. 07 C 4507, 2008 WL
   4360648, at *15 (N.D. Ill. Sept. 23, 2008); *In re IMAX Sec. Litig.*, 587 F. Supp. 2d 471, 485-
   86 (S.D.N.Y. 2008).  The decision in *In re StockerYale Sec. Litig.*, 453 F. Supp. 2d 345, 358-
   59 (D.N.H. 2006), does not describe with any detail the nature of defendants' loss causation
   argument, and thus, is not relevant for present purposes.

(citation omitted); *In re Sec. Capital Assurance Ltd. Sec. Litig.*, No. 07 Civ. 11086 (DAB), 2010 WL 1372688, at *32 (S.D.N.Y. Mar. 31, 2010) (dismissing complaint for failure to plead loss causation where plaintiffs had not pled facts showing that "it was the incremental revelation of Defendants' fraudulent misrepresentations, and not the actions of third parties or other circumstances of the market, that caused the decline in SCA's share price over the Class Period.").[21]

---

[21] None of the cases cited in plaintiff's opposition memorandum prevent this Court from concluding that loss causation has not been adequately alleged.  For example, in *In re Moody's*, 599 F. Supp. 2d at 513, the court noted, citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), that "[w]here there is a market-wide downturn in a particular industry . . . Plaintiffs must show that their loss was caused by the Defendants' fraud, rather than the intervening events, in order to survive a motion to dismiss," but because Moody's stock price performance did not track that of its closest competitors, the court concluded that there was no industry-wide downturn sufficient to overcome plaintiff's loss causation allegations. *Id.* at 513-14.  The court in *King County v. IKB Deutsche Industriebank AG*, No. 09 Civ. 8387 (SAS), 2010 WL 1702196, at *2 (S.D.N.Y. Apr. 26, 2010), noted that it was not enough that a plaintiff simply plead that defendant's fraud caused a loss, but rather, the plaintiff must plead "facts that would allow a factfinder to ascribe *some rough proportion* of the whole loss to [the defendant's alleged] misstatements." (quoting *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007)).  Plaintiff's lengthy quote from *In re Countrywide Fin. Corp.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008), is beside the point, as the discussion in that case involved a Section 11 claim, for which there is no loss causation requirement.  *Id.* at 1170.  In *Stumpf v. Garvey*, 02-MDL-1335-PB, 2005 WL 2127644, at *12 (D.N.H. Sept. 2, 2005), the industry-wide downturn did not trump plaintiff's loss causation allegations because "the entire market for telecommunications stock reacted negatively to [defendants'] revelation," a set of facts absent from this case.

Stated differently, plaintiff must allege facts demonstrating that its loss is the result of fraud, and *not* the result of "the tangle of factors affecting price." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 343 (2005). Plaintiff fails to meet this pleading burden, and accordingly, the Section 10(b) claim must be dismissed for failure to adequately plead loss causation.[22]

## II.   The Section 20(a) Claim Must Be Dismissed

Plaintiff does not dispute that, in the absence of a primary violation under Section 10(b), there can be no Section 20(a) liability for any Individual Defendant. Plaintiff's failure to adequately allege a primary violation by the corporate defendants means that the Individual Defendants cannot be liable as control persons.

The Section 20(a) claim must be dismissed against Carter, Butera, and Cullen, who served as TFC officers, for another reason: TFC is not even alleged to have been a primary violator. *See* ¶ 374 (alleging for purposes of Section 20(a) claim that "Textron and the Individual Defendants" – *but not TFC* – "each violated Section 10(b) and Rule 10b-5 . . . ."). Plaintiff resorts to mischaracterizing the pleading when it argues that control person liability may attach to these Individual Defendant because TFC "made its own fraudulent public statements during the Class Period." Opp. at 54. To the contrary, TFC is *not* alleged to have itself made any misstatements, but rather is named as a defendant only insofar as it is "a direct and knowing source of many of the alleged false and misleading statements issued during the Class Period."

---

[22]  Nor can plaintiff avoid dismissal on loss causation grounds by misinterpreting the stock price chart referenced in defendants' opening memorandum. *See* Def. Br. at 56. The chart was not "artfully crafted" by defendants, as plaintiff asserts (Opp. at 51), but drawn from the disclosure in Textron's Form 10-K required by Item 201(e) of SEC Regulation S-K. *See* Textron, Annual Report (Form 10-K), at 15 (Feb. 25, 2010), Ex. 1. The chart shows a similar trajectory in stock price performance for Textron relative to key indices – a coordinated price movement that plaintiff does not, and cannot, explain away.

¶ 19.[23]

Thus, the Section 20(a) must be dismissed against each of the Individual Defendants.

## CONCLUSION

For the foregoing reasons, and those stated in defendants' opening memorandum, this Court should grant the defendants' motion to dismiss the Complaint with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Dated:   July 8, 2010

DEFENDANTS
By their attorneys,

/s/  John A. Tarantino
JOHN A. TARANTINO (#2586)
jtarantino@apslaw.com
PATRICIA K. ROCHA (#2793)
procha@apslaw.com
NICOLE J. DULUDE (#7540)
ndulude@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903
Tel:  401-274-7200
Fax: 401-351-4607

-and-

Mitchell A. Karlan *(pro hac vice)*
Brian M. Lutz *(pro hac vice)*
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
Tel:  212-351-4000

---

[23] Plaintiff's suggestion, moreover, that Wilburne controlled the day-to-day operations of Textron (Opp. Br. at 54 n.15) is improper, as plaintiff does not even attempt to support this conclusory argument with an allegation drawn from the Complaint.

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of July, 20010, I served a true copy of the within pleading *via electronic means (ECF)* on:

*Liaison Counsel for Plaintiffs:*

Barry J. Kusinitz, Esq.
155 South Main Street, Suite 405
Providence, RI 02903
bkusinitz@bdglawyers.com

Lead Counsel for Plaintiffs:

Samuel H. Rudman, Esq.
srudman@csgrr.com
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY  11747

David J. George, Esq.
DGeorge@csgrr.com
Coughlin Stoia Geller Rudman & Robbins LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432

*And by ECF to:*

Mark B. Morse, Esq.
mark@morselawoffice.com
The Law Office of Mark B. Morse
420 Angell Street
Providence, RI  02906

Peter N. Wasylyk, Esq.
pnwlaw@aol.com
1307 Chalkstone Avenue
Providence, RI  02908

Raymond A. Marcaccio, Esq.
ram@om-rilaw.com
Oliverio & Marcaccio LLP
55 Dorrance Street, Suite 400
Providence, RI  02903

Danielle S. Myers, Esq.
Coughlin Stoia Geller Rudman & Robbins
655 W. Broadway, Suite 1900
San Diego, CA  92101

Mitchell M.Z. Twersky, Esq.
Ximena R. Skovron, Esq.
Abraham, Fruchter & Twersky LLP
One Penn Plaza, Suite 2805
New York, NY  10119

Robert M. Roseman, Esq.
Spector Roseman Kodroff & Willis P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103

/s/ Nicole J. Dulude   100883235_7.DOC